**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Samuel E. HARRIS.**

Superior Court of Pennsylvania.

Submitted Feb. 26, 2009.

Filed April 22, 2009.

Susan E. Moyer, Asst. Dist. Atty., for Com., appellant.

Vincent J. Quinn, Lancaster, for appellee.

BEFORE: FORD ELLIOTT, P.J., DONOHUE and POPOVICH, JJ.

OPINION BY FORD ELLIOTT, P.J.:

¶ 1 The Commonwealth appeals the March 30, 2007 order granting Samuel Harris's ("appellee's") petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541–9546. The PCRA court determined that appellee had received ineffective assistance of counsel when his attorney failed to file a motion to suppress his statements to the police following his arrest. After careful review, we reverse the order of the PCRA court.

¶ 2 The procedural history of this case is as follows. Appellee was alleged to have engaged in various illegal activities with the minor female victim, F.B. Appellee was arrested on April 11, 2001 on unrelated charges by members of the East Lampeter Township Police. He subsequently provided an inculpatory statement to the police about the events with F.B. and was charged with two counts of rape, two counts of involuntary deviate sexual intercourse, two counts of aggravated indecent assault, one count of indecent assault, one count of false imprisonment, and one count of corruption of minors.

¶ 3 On January 11, 2002, appellee pled guilty to all charges pursuant to a negotiated plea agreement.[1] On this same date, appellee was sentenced to an aggregate term of 7½ to 15 years' imprisonment. Immediately after appellee was sentenced, the Commonwealth requested that the trial court order appellee to undergo assessment by the Sexual Offender's Assessment Board ("SOAB") to assess appellee's sexually violent predator ("SVP") status. The trial court denied the Commonwealth's request on the grounds that certain provisions of Megan's Law[2] were unconstitutional.[3]

¶ 4 At this point, the record becomes convoluted. On January 23, 2002, the Commonwealth filed a notice of appeal to the Pennsylvania Supreme Court pursuant

---

1. Appellee originally pled guilty on January 7, 2002; however, the court vacated the plea due to the court's concern about a possible error in the colloquy. A new colloquy was conducted on January 11, 2002, and appellee again pled guilty pursuant to the same negotiated agreement. (Notes of testimony, 11/28/05 at 22–23.)

2. 42 Pa.C.S.A. §§ 9791–99.9.

3. The trial court's refusal to hold the hearing was based on a prior decision of the Court of Common Pleas of Lancaster County which had held Megan's Law was unconstitutional; this case was later reversed by the Pennsylvania Supreme Court as discussed *infra*. *Commonwealth v. Murray*, 577 Pa. 341, 845 A.2d 769 (2004), citing *Commonwealth v. Williams* ("*Williams II*") 574 Pa. 487, 832 A.2d 962 (2003); *Commonwealth v. Maldonado*, 576 Pa. 101, 838 A.2d 710 (2003).

to 42 Pa.C.S.A. § 722(7), from the January 7, 2002 order and judgment of sentence, asserting the SVP provisions of Megan's Law were, in fact, constitutional. On February 6, 2002, the Pennsylvania Supreme Court reserved ruling on the Commonwealth's appeal pending the outcome of a related case, *Williams II.*

¶ 5 On February 8, 2002, appellee also filed a notice of appeal from the January 11, 2002 judgment of sentence. Appellee's court-appointed counsel filed an *Anders* brief and a motion to withdraw. A panel of this court affirmed the judgment of sentence on October 18, 2002 and permitted counsel to withdraw. *Commonwealth v. Harris,* 815 A.2d 1126 (Pa.Super.2002) (unpublished memorandum). Appellee did not file an appeal with the Pennsylvania Supreme Court.

¶ 6 On June 22, 2004, the Pennsylvania Supreme Court reversed the trial court's order insofar as it found specified provisions of Megan's Law unconstitutional and remanded for further proceedings. *Commonwealth v. Harris,* 578 Pa. 240, 851 A.2d 856 (2004), citing *Williams II, supra; Maldonado, supra.* Ultimately, the SOAB determined that appellee did not meet the criteria of a sexually violent predator. On November 3, 2004, the Commonwealth filed notice that appellee would not be subject to the SVP provisions of Megan's Law II.

¶ 7 On December 21, 2004, appellee filed a *pro se* PCRA petition. Counsel was appointed and an amended petition was filed on May 27, 2005 raising issues regarding the ineffectiveness of appellate counsel for not raising the issue of prior counsel's failure to file a motion to suppress the statement made to the police. On November 28, 2005, a PCRA hearing was held to determine the timeliness of the petition; the court found appellee's petition had been timely filed. *(See* opinion and order, 3/30/07 at 4–10.) On October 2

and 4, 2005, hearings were held regarding the merits of the petition. Thereafter, the PCRA court granted appellee relief, permitting him to withdraw his guilty plea and proceed to trial. The Commonwealth filed a notice of appeal on April 9, 2007. The court directed the Commonwealth to file a concise statement of matters complained of on appeal. The Commonwealth complied, and the PCRA court filed an opinion.

¶ 8 On appeal, the Commonwealth raises two issues:

WHETHER THE PCRA COURT ERRED BY FINDING THAT GUILTY PLEA COUNSEL [WAS] INEFFECTIVE FOR NOT LITIGATING A SUPPRESSION ISSUE WHEN SUCH A MOTION WOULD HAVE BEEN UNSUCCESSFUL?

WHETHER THE PCRA COURT ERRED BY FINDING THAT DEFENDANT'S GUILTY PLEA WAS TAINTED WHERE GUILTY PLEA COUNSEL CANNOT BE FOUND TO HAVE BEEN INEFFECTIVE?

Commonwealth's brief at 4.

■■ ¶ 9 Preliminarily, as did the lower court, we consider whether the PCRA petition was timely filed. *See Commonwealth v. Hutchins,* 760 A.2d 50, 53 (Pa.Super.2000) (holding that an appellate court may consider the issue of jurisdiction in a PCRA appeal *sua sponte*). It is imperative to note that the timeliness requirements of the PCRA are jurisdictional in nature. *Commonwealth v. Pursell,* 561 Pa. 214, 219, 749 A.2d 911, 913 (2000). Statutory time restrictions may not be altered or disregarded to reach the merits of the claims raised in the petition. *Commonwealth v. Taylor,* 933 A.2d 1035, 1038 (Pa.Super.2007).

■■ ¶ 10 A petition for relief under the PCRA, including a second or subse-

quent petition, must be filed within one year of the date the judgment becomes final unless the petition alleges, and the petitioner proves, that an exception to the time for filing the petition, set forth at 42 Pa.C.S.A. § 9545(b)(1)(i), (ii), and (iii), is met.[4] "[I]t is now well settled that there is no generalized equitable exception to the jurisdictional one-year time bar pertaining to post-conviction petitions." *Commonwealth v. Brown*, 596 Pa. 354, 360, 943 A.2d 264, 267 (2008). "The PCRA confers no authority upon this Court to fashion *ad hoc* equitable exceptions to the PCRA time-bar in addition to those exceptions expressly delineated in the Act." *Commonwealth v. Eller*, 569 Pa. 622, 634, 807 A.2d 838, 845 (2002).

■ ¶ 11 According to the plain language of 42 Pa.C.S.A. § 9545(b)(3), a judgment becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." *See Commonwealth v. Gamboa–Taylor*, 562 Pa. 70, 76, 753 A.2d 780, 783 (2000) (the petition must be filed within one year of the "expiration of direct review" if one of the three limited exceptions does not apply). This case ultimately presents an interesting procedural knot to untie in terms of *when* appellee's judgment became final for PCRA purposes—was it 30 days after this court affirmed his judgment of sentence and resolved appellee's appeal or, as the PCRA court found, 90 days after the Pennsylvania Supreme Court disposed of the Commonwealth's appeal by its order finding Megan's Law applied as it was constitutional? Our review of relevant authority

has produced no cases that directly discuss the unique circumstances of this case.

¶ 12 The PCRA court credited appellee's theory that the one-year PCRA petitioning period should commence from September 20, 2004—90 days after the Pennsylvania Supreme Court reversed that portion of the trial court's January 7, 2002 order denying the Commonwealth's request for an SVP assessment. (PCRA court opinion, 3/30/07 at 10.) The PCRA court found that the ultimate question in this matter involves the meaning of the phrase "conclusion of direct review" and the term "judgment"; thus, the court considered the Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1501 *et seq.* (PCRA court opinion, 3/30/07 at 6–7.)

¶ 13 In conducting its review, the court observed that the purpose of the Act is " 'to channel claims for post-conviction relief through the PCRA, to ensure that the post-conviction review process remains open for review of certain fundamental claims implicating the reliability of the conviction and/or sentence, but to limit this opportunity to a single, counseled petition.' " *(Id.* at 7, quoting *Commonwealth v. Williams*, 566 Pa. 553, 565, 782 A.2d 517, 524 (2001).) *See* 42 Pa.C.S.A. § 9542. The court noted that this stated purpose does not limit the phrase "direct review" to review sought by a defendant as the Commonwealth has the right to appeal in limited circumstances. (PCRA court opinion, 3/30/07 at 7.) "The Act does not draw a distinction between direct review at the request of the Commonwealth and direct review at the request of a defendant, nor is there evidence of legislative intent indicating that such a distinction exists." *(Id.)*

---

4. These exceptions include interference by government officials in the presentation of the claim, after-discovered facts or evidence, and an after-recognized constitutional right. 42 Pa.C.S.A. § 9545(b)(1)(i), (ii), and (iii). A

PCRA petition invoking one of these statutory exceptions must be filed within 60 days of the date the claims could have been presented. 42 Pa.C.S.A. § 9545(b)(2).

¶ 14 The second term the court examined is the term "judgment." We agree with the PCRA court's finding that the imposition of SVP status is a component of the judgment of sentence even though the ultimate collateral consequences are nonpunitive. *Commonwealth v. Williams*, 574 Pa. 487, 832 A.2d 962, 986 (2003); *Commonwealth v. Plucinski*, 868 A.2d 20, 27–28 (Pa.Super.2005) ("Judgment of sentence reversed and vacated with regard to Appellant's SVP classification; judgment of sentence affirmed in all other respects."); *Commonwealth v. Dixon*, 907 A.2d 533, 539 (Pa.Super.2006), *appeal denied*, 591 Pa. 722, 920 A.2d 830 (2007) ("Thus, we conclude that the trial court did not abuse its discretion when it found that Appellant was a sexually violent predator.... Accordingly, we affirm the judgment of sentence."); *Commonwealth v. Krouse*, 799 A.2d 835 (Pa.Super.2002), *appeal denied*, 573 Pa. 671, 821 A.2d 586 (2003) (reversing judgment of sentence in regard to the SVP determination). Pursuant to 42 Pa.C.S.A. § 9795.4(e)(3), the trial court is to determine "prior to sentencing" whether the Commonwealth has proven by clear and convincing evidence that the individual is an SVP. As illustrated in our recent opinion in *Commonwealth v. Feucht*, 955 A.2d 377 (Pa.Super.2008), the Megan's Law SVP determination is done by the sentencing court in what is typically considered a "sentencing/SVP hearing" at which time the court receives evidence on the SVP issue, including a report and testimony from an SOAB representative. *Id.* at 379. The SVP determination is then made prior to sentencing.

¶ 15 The integral nature of the SVP process with sentencing is evident from § 9795.4(e)(4)'s requirement that the assessment report by the Board expert "be provided to the agency preparing the presentence investigation." Thus, the presentence investigator is given the report for consideration by the investigator in writing his or her own report and recommendation for sentencing, and we have held the Board report may be utilized by the sentencing court as an aid in sentencing. *Commonwealth v. P.L.S.*, 894 A.2d 120, 132 (Pa.Super.2006), *appeal denied*, 588 Pa. 780, 906 A.2d 542 (2006). The sentencing court can go so far as to consider its own SVP determination as a legal factor in imposing sentence in the aggravated range of the Sentencing Guidelines. *Commonwealth v. Shugars*, 895 A.2d 1270, 1277 (Pa.Super.2006). With the converse being true, a sentencing court may rely on the determination of the SOAB that a defendant was not an SVP as a mitigating factor in fashioning its sentence. *Commonwealth v. McIntosh*, 911 A.2d 513, 522 n. 14 (Pa.Super.2006), *per curiam Order aff'd in part rev'd in part on other grounds*, 592 Pa. 7, 922 A.2d 873 (2007).

¶ 16 Further we have held that challenges to Megan's Law, including constitutional challenges, must be raised in post-sentence motions. *Commonwealth v. Howe*, 842 A.2d 436, 440–441 (Pa.Super.2004). *See Commonwealth v. Askew*, 907 A.2d 624, 626–627 (Pa.Super.2006), *appeal denied*, 591 Pa. 709, 919 A.2d 954 (2007) (pre-sentence motion for extraordinary relief alone does not act to preserve Megan's Law claims, which must be raised in post-sentence motion). In addition, as spelled out in 42 Pa.C.S.A. § 9795.5(d) of Megan's Law, relating to exemption from certain notification, both the PCRA petitioner and the Commonwealth shall have the right to appellate review of "the actions of the sentencing court," constituting a clear statement by the General Assembly that it is the trial court sitting as the sentencing court that undertakes the Megan's Law determination, further demonstrating that SVP status is a component of the judgment of sentence.

▆ ¶ 17 Therefore, we find no error in the PCRA court's determination that appellee's petition met the timeliness requirement of the PCRA. We agree that the term "judgment" is not limited to the court's sentence of incarceration, but also includes that status determination under Megan's Law. Appellee's judgment of sentence became final 90 days after the Pennsylvania Supreme Court filed its June 22, 2004 order and direct review was concluded.

¶ 18 Thus, we now turn to the merits of the Commonwealth's issues. The first issue presented is whether the PCRA court erred by finding merit to appellee's argument underlying his ineffective assistance of counsel claim—that appellee's April 11, 2001 statement to the police was in violation of his *Miranda*[5] rights as he was subjected to custodial interrogation by the police, requested counsel, and a detective re-initiated further conversation about the crimes.

¶ 19 In the case ***sub judice***, the PCRA court made the following factual findings, which we find are fully supported by the record. Appellee was arrested for parole violations and taken to an interrogation room in the East Lampeter Township police station. Detectives Velez and Sensenig advised appellee of his *Miranda* rights at approximately 9:51 a.m. (Notes of testimony, 10/2–4/06 at 8–9, 80, 92–93.) Appellee requested to speak with an attorney, and the officers ceased all questioning. *(Id.)* However, Detective Sensenig proceeded to fill out his department's arrest processing form which consisted of asking appellee questions concerning his biographical information. *(Id.* at 78–79.) At no point during the completion of the form was appellee questioned about the incident.

¶ 20 Upon the completion of the arrest form, appellee asked Detective Sensenig, "What do you want to know?" *(Id.* at 79, 87.) The detective responded, "about what?" Appellee replied, "about last night with [F.B.]." *(Id.* at 12, 79.) Detective Sensenig explained that they could not talk about F.B. because appellee had requested an attorney. *(Id.* at 79–80.) Appellee then stated, "well, I want to think about it for awhile." *(Id.* at 80.) The detective left the interview room at approximately 10:00 a.m. *(Id.* at 80–81.)

¶ 21 At approximately 10:25 a.m., appellee asked for a cigarette and was escorted by the detectives to the garage of the police station to smoke. While in the garage, Detective Sensenig asked appellee if he had enough time to think. *(Id.* at 12, 81, 87, 100–101.) Appellee replied, "I want to make this as easy as possible for [F.B.]." *(Id.* at 81.) Appellee indicated that he wanted to make a statement but knew a lawyer would advise against this course of action. *(Id.)* Detective Sensenig again told appellee that they could not discuss anything because appellee had asked for an attorney. Appellee then indicated he was willing to talk to the police without an attorney. *(Id.* at 97.) They returned to the interview room where appellee was again advised of his *Miranda* rights and executed a waiver form. Appellee gave a statement in which he admitted sexual contact with the minor victim. The statement was completed between 10:35 a.m. and 12:57 p.m.

▆ ¶ 22 Our standard of review for an order denying post-conviction relief is whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. *Commonwealth v. Allen,* 557 Pa. 135, 732 A.2d 582 (1999). The PCRA

---

5. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

court's findings will not be disturbed unless there is no support for the findings in the certified record. *Commonwealth v. Carr,* 768 A.2d 1164 (Pa.Super.2001). In this matter, the issue before the PCRA court was stated in terms of ineffective assistance of counsel. The petitioner in such matters is required to make the following showing in order to succeed with such a claim: (1) that the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Kimball,* 555 Pa. 299, 724 A.2d 326 (1999). The failure to satisfy any prong of this test will cause the entire claim to fail. *Commonwealth v. Daniels,* 947 A.2d 795 (Pa.Super.2008). Finally, counsel is presumed to be effective, and petitioner has the burden of proving otherwise. *Commonwealth v. Pond,* 846 A.2d 699 (Pa.Super.2004).

¶ 23 In *Miranda v. Arizona,* the United States Supreme Court directed that "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." 384 U.S. at 473–474, 86 S.Ct. 1602. Subsequently, the Court amplified *Miranda,* concluding that:

A reasonable and faithful interpretation of the *Miranda* opinion must rest on the intention of the Court in that case to adopt 'fully effective means ... to notify the person of his right of silence and to assure that the right will be scrupulously honored ... the critical safeguard identified in the passage at issue is a person's right to cut off questioning.'
....

We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'

*Michigan v. Mosley,* 423 U.S. 96, 103–104, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). Among the factors the *Mosley* Court considered in determining that the police had acted properly are the following: 1) the defendant had been advised of his *Miranda* rights before both interrogations; 2) the officer conducting the first interrogation immediately ceased the questioning when the defendant expressed his desire to remain silent; and 3) the second interrogation occurred after a significant time lapse, was conducted in another location by another officer, and related to a different offense. *See also Commonwealth v. Russell,* 938 A.2d 1082, 1090–1091 (Pa.Super.2007), *appeal denied,* 598 Pa. 766, 956 A.2d 434 (2008).

■ ¶ 24 In Pennsylvania, we have determined accordingly that a suppression court reviewing a statement made after the defendant's initial invocation of the right to remain silent must recognize as pivotal the purpose for which the renewed interrogation was conducted and the circumstances under which it occurred.

[J]udicial inquiry in each instance should focus on the circumstances attending the defendant's invocation of his or her right to silence, as well as the circumstances attending any further attempt at questioning. *Hence, the test should ask whether the official purpose of resuming questioning was to entice the arrestee to abandon his right to remain silent, or simply to find out whether he or she had a change of mind.* Only then can it be concluded whether, in fact, the defendant's ' "right to cut off questioning" was "scrupulously honored." '

*Commonwealth v. Henry,* 410 Pa.Super. 324, 599 A.2d 1321, 1325 (1991), quoting *Commonwealth v. Mignogna,* 401 Pa.Super. 188, 585 A.2d 1, 15 (1990) (Popovich, J.

concurring) (emphasis added). Thus, we must determine whether the police fully respected appellee's right to remain silent, or whether appellee later waived that right.

■██ ¶ 25 The Commonwealth concedes that appellee invoked his right to counsel but claims that appellee later waived his right by reinitiating the conversation with police. (Commonwealth brief at 10–11.) The Commonwealth argues that the PCRA court erred in determining that Detective Sensenig re-initiated questioning by asking appellee "if he had time to think" and that this question violated appellee's constitutional rights. We agree and cannot find that the record supports the determination that by asking the aforementioned question, the detective acted to "entice the arrestee to abandon his right to remain silent." *Henry*, 599 A.2d at 1325. Nor does the record support a determination that the question was designed to invoke an incriminating response. Rather, the detective's question was neutral and simply necessitated a "yes" or "no" answer.

¶ 26 For example, this case is distinguishable from *Henry, supra*. In *Henry*, immediately after being given his *Miranda* warnings, the defendant was asked if he wished to speak without a lawyer being present. We held that the defendant's response that he had no desire to speak with anybody at that time was an invocation of the right to remain silent. *Id.* at 1324. We found that the police did not scrupulously honor that request to remain silent and instead, "from the moment [the officer] initiated the conversation with the [defendant], [the officer] was attempting 'to entice the arrestee to abandon his right to remain silent.'" *Id.* at 1325. The officer confronted the defendant with the fact that he was going to execute a search warrant at appellant's home and thereafter, the defendant responded "You got me" and

thereafter made incriminating statements. *Id.* at 1324.

¶ 27 In this case, the detectives fully honored appellee's request not to discuss the matter, even after appellee repeatedly showed a desire to continue to speak by asking the detectives "what do you want to know [about last night]?" and stating "I want to make this as easy as possible for [F.B.]." *(See* notes of testimony, 10/2–4/06 at 79, 80, 81, 87.) It is clear that the decision to waive his right to an attorney was appellee's.

¶ 28 Additionally, even after appellee answered the detective's question of "did you have enough time to think" by responding "I want to make this as easy as possible on [F.B.]," Detective Sensenig *again* honored appellee's invocation of his right to counsel. The detective explained that the police could not discuss anything with him as he had asked for an attorney. It was then that appellee indicated he wanted to waive his right.

¶ 29 After careful review of all the circumstances attending appellee's statements, we disagree with the PCRA court that appellee's right to remain silent was not scrupulously honored. In the present case, as in *Mosley, supra*, police officers properly advised appellee of his *Miranda* rights before commencing both interrogations. Although there was not a significant lapse of time between the encounters and the second interrogation was not conducted by another officer in another location, we do not find these factors dispositive. *See Russell*, 938 A.2d at 1091 ("Although the second interrogation did not occur in a different location than the first interrogation, this factor cannot be considered dispositive because there were no other facts demonstrating that the police acted coercively in order to force Appellant into abandoning her right to remain silent."); *cf. Mignogna*, 585 A.2d

at 6 (focus of inquiry should be determination of whether the official purpose of resuming questioning was to entice the arrestee to abandon her right to remain silent or simply to find out whether she had a change of mind). Again, considering the totality of the circumstances at hand, appellee's invocation of his right to silence controlled the circumstance which attended the resumption of questioning. The purpose of the officer's question was not to entice appellee to abandon his right to remain silent, but to determine whether he had a change of mind, as it was appellee who suggested to police that he might wish to speak with them at a later time. "Thus, this is not a case in which police failed to honor a decision to terminate questioning either by refusing to discontinue the interrogation or by persisting in repeated efforts to change appellant's mind." *Id.*

¶ 30 Based on the foregoing analysis, we cannot agree with the PCRA court's finding that trial counsel was ineffective for failing to file a motion to suppress as such a motion would not have been meritorious. *See Commonwealth v. Jones,* 590 Pa. 202, 219, 912 A.2d 268, 278 (2006) (holding counsel cannot be ineffective for failing to raise a meritless claim). Thus, it cannot be found that appellee was unlawfully induced to plead guilty, and we reverse the PCRA court's grant of appellee's request to withdraw his guilty plea and proceed to a new trial.

¶ 31 We reverse the PCRA court's March 30, 2007 order. Jurisdiction is relinquished.