J-A21031-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: OWEN NAGLE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: OWEN NAGLE, | |
| Appellant | No. 2496 EDA 2013 |

Appeal from the Order Entered July 16, 2013
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-MD-0000722-2013

BEFORE:  BOWES,[*] OTT, and STRASSBURGER,[**] JJ.

MEMORANDUM BY BOWES, J.:                    **FILED DECEMBER 10, 2014**

Owen Nagle appeals from the July 16, 2013 order requiring him to register and report pursuant to the Sex Offender Registration and Notification Act ("SORNA").  After careful review, we affirm.

Appellant admitted to committing aggravated sexual assault under New Jersey law in 2004, and was sentenced to probation.  Although the certified record does not reflect Appellant's age at the time he committed the act, the parties do not dispute that he was fourteen years old.  Appellant's brief also indicates that the offense was for sexual penetration of a person less than thirteen.  **See** Appellant's brief at 7 (citing N.J.S. 2c:14-2(a)(1)).

_____

[*]  This case was reassigned to this author.

[**] Retired Senior Judge assigned to the Superior Court.

Pursuant to that state's law, Appellant was required to register as a sex offender for a period of fifteen years. Thereafter, Appellant moved to Lehigh County, Pennsylvania. Under Pennsylvania law, a juvenile adjudicated delinquent for sex offenses in Pennsylvania was not required to register as a sex offender. However, those adjudicated delinquent or found guilty in another state who were subject to sex offender registration in that state were required to register in Pennsylvania for the same period. Thus, Appellant was required to continue registering as a sex offender in Pennsylvania.

On December 4, 2012, Pennsylvania State Police notified Appellant that pursuant to SORNA, a version of which was to take effect on December 20, 2012, he was required to register for life and provide quarterly registration updates. Subsequently, on February 15, 2013, Appellant filed a petition challenging this reclassification. Appellant averred that SORNA constituted an impermissible *ex post facto* law, violated the separation of powers doctrine, and violated his rights against double jeopardy.

The court conducted a hearing on April 15, 2013, and the parties submitted briefs and presented argument. The court denied Appellant's petition on July 16, 2013. This timely appeal ensued. The trial court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the trial court

authored its opinion. The matter is now ready for this Court's review. Appellant presents two issues for our consideration.

> A. Whether application of 42 Pa.C.S.A. § 9799, et al, to Appellant violates the prohibition on *ex post facto* laws found in Article 1, Section 10 of the United States Constitution, and Article 1, Section 17 of the Pennsylvania Constitution?

> B. Whether application of 42 Pa.C.S.A. § 9799, et al, to Appellant violates the Separation of Powers Doctrine inherent in the constitutional framework of the United States and Pennsylvania Constitutions?

Appellant's brief at 6.

Although Appellant levels his first argument as a challenge under both the federal and Pennsylvania constitutions, he has made no specific argument under the latter constitution. Appellant does, however, rely extensively on the Ohio Supreme Court decision in **State v. Williams**, 952 N.E.2d 1108 (Ohio 2011). Therein, the Ohio Supreme Court ruled that Ohio's SORNA law impermissibly violated the Ohio Constitution's prohibition against retroactive laws.

To the extent Appellant premises his argument on a federal violation of the *ex post facto* clause, his issue fails in light of this Court's recent decision in **Commonwealth v. Perez**, 2014 PA Super 142. We note that **Perez** is not controlling precedent with respect to the merits of the Pennsylvania Constitution's *ex post facto* protections. The **Perez** Court concluded that, because the defendant therein did not present any argument specifically under our state charter, his state constitutional claim failed. The issue of

whether the Pennsylvania Constitution affords differing protections based on a **Commonwealth v. Edmunds**, 586 A.2d 887 (Pa. 1991) analysis, was not decided. As noted, Appellant does not make any argument specific to the Pennsylvania Constitution. Accordingly, we decline to make the argument for him.

Appellant also discusses this Court's recent decision in **Commonwealth v. Hainesworth**, 82 A.3d 444 (Pa.Super. 2013) (*en banc*). That decision, however, did not rest on an analysis of the *ex post facto* clause and, while Appellant may have a viable challenge under **Hainesworth**, he failed to adequately preserve that issue in either his petition contesting his lifetime registration and reporting requirements or his Pa.R.A.P. 1925(b) concise statement. Thus, this issue is waived.[1]

Appellant's second claim on appeal is that the new registration and reporting requirements violate the separation of powers doctrine. Appellant cites and discusses **State v. Bodyke**, 933 N.E.2d 753 (Ohio 2010), in support of his position. There, the Ohio version of Megan's Law included three categories of offenders: sexually-oriented offender, habitual sexual

---

[1] Since Appellant is not challenging a conviction or sentence, any ineffectiveness claim would not have to be leveled in a PCRA petition. However, insofar as Appellant may not be "in custody" based on the non-punitive collateral consequence of registering as a sex offender, a *habeas corpus* petition may also be inappropriate. Nonetheless, a *coram nobis* petition could be one avenue of seeking to litigate a **Hainesworth**-type ineffectiveness claim.

offender, and sexual predator. An Ohio court was required to conduct a classification hearing to determine into which category an offender fit. Those classified as sexually-oriented offenders had to register annually for ten years, but no community notification was mandated. A habitual sexual offender was required to register annually for twenty years, and community notification occurred if a judge determined it was necessary. Lastly, a sexual predator registered every ninety days for life and community notification was required.

The Ohio SORNA statute removed these classifications and substituted a three-tiered system based on the individual's convictions. The new Ohio law removed the judges' ability to classify an offender and directed the Ohio attorney general to reclassify existing offenders. Expert testimony was no longer presented and "the offender's criminal and social history [were] no longer relevant." **Bodyke**, **supra** at 760. The Ohio Supreme Court in **Bodyke** ruled that Ohio's SORNA statute unconstitutionally violated the separation of powers doctrine. Appellant contends that **Bodyke** is persuasive and compels a similar result herein.

Recently, this Court set forth:

The separation of powers doctrine provides that "the executive, the legislature and the judiciary are independent, co-equal branches of government." **Beckert v. Warren**, 497 Pa. 137, 439 A.2d 638, 642 (Pa. 1981). The dividing lines among the three branches "are sometimes indistinct and are probably incapable of any precise definition." **Stander v. Kelly**, 433 Pa. 406, 250 A.2d 474, 482 (Pa. 1969) (plurality). "Under the principle of separation of the powers of government, . . . no

branch should exercise the functions exclusively committed to another branch." **Sweeney v. Tucker**, 473 Pa. 493, 375 A.2d 698, 706 (Pa. 1977).

**Commonwealth v. Melvin**, 2014 PA Super 181, *5.

"This separation appeared in Pennsylvania as early as 1776 in the Plan or Form of Government for the Commonwealth or State of Pennsylvania, prepared by the convention in that year." **In re Investigation by Dauphin County Grand Jury**, **September, 1938**, 2 A.2d 804, 807 (Pa. 1938); **Commonwealth v. Sutley**, 378 A.2d 780, 783 (Pa. 1977). The doctrine was continued in the constitutions of 1790, 1838, and 1873. **Id**.; **Beyers v. Richmond**, 937 A.2d 1082, 1090 (Pa. 2007).

Indeed, it has been written that, "[w]hen the legislative and executive powers are united in the same person, or in the same body of magistrates, there can be no liberty[.]" John Adams, A Defence of the Constitutions of Government of the United States of America, Vol. I, at 153 (3rd Ed. Philadelphia, 1797). Writing further, Adams eloquently set forth, "Again, there is no liberty, if the power of judging be not separated from the legislative and executive powers: were it joined with the legislative, the life and liberty of the citizens would be exposed to arbitrary control[.]" **Id**. at 154.

Pursuant to this doctrine, "the legislature cannot invade the province of the judiciary by interfering with judgments or decrees previously rendered." **Pennsylvania Co. for Insurances on Lives and Granting**

*Annuities v. Scott*, 29 A.2d 328, 329-330 (Pa. 1942). Phrased differently, "even though the legislature possesses the power to promulgate the substantive law, judicial judgments and decrees entered pursuant to those laws may not be affected by subsequent legislative changes after those judgments and decrees have become final." *Sutley*, *supra* at 784 (footnote omitted).[2] Our Supreme Court, writing in 1862, has opined that "the power of the legislature to prescribe a general rule of law[,]" inconsistent with a prior judicial decree, is legitimate "when it operates on future cases and not retrospectively[.]" *Commonwealth ex rel. Johnson v. Halloway*, 42 Pa. 446, 448 (1862).

We agree with the trial court insofar as it recognized certain distinctions between the respective Pennsylvania and Ohio SORNA laws. Pennsylvania's Megan's Law classified offenders as either a sexual offender or a sexually violent predator ("SVP"). Sexual offenders were required to register for ten years unless they were determined to be an SVP, in which case they had to register for life. Lifetime registration was also mandated for those convicted of rape, involuntary deviate sexual intercourse, sexual assault, aggravated indecent assault, and incest with a victim under twelve. Information about the offender was to be posted online for the duration of

---

[2] We are cognizant that the issue in *Sutley* involved ameliorative penal legislation which implicates differing concerns than laws that retroactively act in a harsher manner.

the offender's registration period. In addition, community notification was required for those deemed to be SVPs.

Pennsylvania's new SORNA still retains assessments for SVPs and permits expert testimony. A court still must determine whether an offender is an SVP. Similar to Ohio, however, Pennsylvania now follows a three-tiered system which compels registration for certain offenses irrespective of SVP status. This tiered system also now includes registration for crimes that previously did not compel registration. Nonetheless, prior to the institution of the new Pennsylvania law, certain sexual offenders were subject to automatic registration requirements in Pennsylvania based on their conviction. Accordingly, the separation of powers questions differ with respect to Pennsylvania and Ohio.

Here, the trial court opined that registration is not part of a judgment of sentence and does not impede a court's judicial sentencing function. It added that in Ohio, prior to its passage of its SORNA statute, a judge "retained the ability to conduct individualized assessments, classification hearings, and the power to engage in independent fact finding." Trial Court Opinion, 10/2/13, at 14-15. In contrast, the court noted that Ohio's new SORNA law eliminated a judge's discretion and classification hearings. The lower court then reasoned that Pennsylvania's Megan's Law already classified offenders based on their criminal conviction.

While the court below is correct that registration is not part of the punishment aspect of a judgment of sentence, **Commonwealth v. Leidig**, 956 A.2d 399, 404 (Pa. 2008),[3] it is and was a part of the criminal sentencing process in Pennsylvania where a person's conviction or adjudication did not automatically subject him to lifetime registration. **See Commonwealth v. Baird**, 856 A.2d 114 (Pa.Super. 2004); **see also** former 42 Pa.C.S. § 9795.3 (effective to December 20, 2012); **see also** 42 Pa.C.S. § 9799.23; **Commonwealth v. Masker**, 34 A.3d 841 (Pa.Super. 2011) (*en banc*) (Bowes, J., concurring and dissenting). Further, in **Commonwealth v. Harris**, 972 A.2d 1196 (Pa.Super. 2009), this Court found that SVP status was part of the judgment of sentence. **See also Commonwealth v. Whanger** 30 A.3d 1212, 1219 (Pa.Super. 2011) (Bowes, J., concurring) (citing **Harris**, **supra**).

In **Harris**, the court was faced with determining the finality of the judgment of sentence for purposes of considering the timeliness of a PCRA petition. The **Harris** panel held that the judgment of sentence included a trial court's Megan's Law status determination. Thus, a defendant's

---

[3] Simply because registration is not a criminal punishment does not *ipso facto* mean that a court order either requiring registration or not requiring lifetime registration is not a final decree. Such a position is a *non-sequitur*. Pointedly, defendants may appeal from a Megan's Law determination, as a final order, regardless of whether or not it constitutes criminal punishment. **Commonwealth v. Whanger**, 30 A.3d 1212 (Pa.Super. 2011). This case, of course, is more complicated because Appellant was adjudicated delinquent in another state.

judgment of sentence was not final until after the Supreme Court remanded from a Commonwealth appeal challenging the court's failure to order such an assessment. The **Harris** Court, however, "did not conclude that the judgment of sentence was final after the assessment was completed and the Commonwealth notified the defendant [therein] that he would not be subject to the SVP requirements of Megan's Law." **Whanger**, **supra** at 1219 n.3 (Bowes, J., concurring). In any event, registration requirements and SVP hearings are intertwined with the sentencing process in this Commonwealth.

Thus, for adult defendants who were not subject to lifetime registration based solely on their convictions at the time, the court was required to conduct an individualized assessment at a classification hearing, and perform independent fact-finding to impose lifetime registration. This allowed the court to determine whether the person was so dangerous as to mandate that he register as a sex offender for life.

Of course, in this case, Appellant's triggering registration offense was a juvenile adjudication that occurred in New Jersey. This Court and our legislature have long distinguished juvenile adjudications from convictions. 42 Pa.C.S. § 6354(a); **In re R.D.R.**, 876 A.2d 1009, 1016 (Pa.Super. 2005); **In re K.R.B.**, 851 A.2d 914 (Pa.Super. 2004); **In re R.A.**, 761 A.2d 1220 (Pa.Super. 2000); **see also Commonwealth v. Hale**, 85 A.3d 570 (Pa.Super. 2014), *allowance of appeal granted*, __ A.3d __ (Pa. 2014) (filed July 2, 2014). Indeed, the prior versions of Megan's Law did not require

juveniles adjudicated delinquent in Pennsylvania to register as sex offenders. *See Commonwealth v. Ramadan*, 70 Pa. D.&C. 4th 521 (Pa.Com.Pl. 2005). The record is unclear as to whether Appellant was subject to the New Jersey equivalent of an SVP hearing or if New Jersey law at that time required such a proceeding.

Importantly, when an SVP hearing is held in Pennsylvania, the registration period is a final decree once thirty days elapsed from entry of the order determining sexually violent predator status. *See Whanger*, *supra*. The court loses jurisdiction to alter or change its SVP determination thirty days after it enters its order. To the extent that lifetime registration is automatically retroactively statutorily imposed, based on convictions or adjudications that did not result in such registration before, it could potentially, in certain instances, violate the separation of powers doctrine.[4]

For example, if a person was determined not to be an SVP by a Pennsylvania court's individualized assessment and independent fact-finding,

---

[4] The statute now requiring Appellant to register for life reads as follows.

> A juvenile offender who was adjudicated delinquent in this Commonwealth, or who was adjudicated delinquent in another jurisdiction or foreign country as a consequence of having committed an offense similar to an offense which would require the individual to register if the offense was committed in this Commonwealth, shall register for the life of the individual.

42 Pa.C.S. § 9799.15(4). The prior law provided that Appellant was subject to registration for the period equal to the time required in New Jersey.

it could be a violation of the separation of powers doctrine for the legislature to require that individual to register for life after the fact based on the same facts by declaring him or her an SVP. However, the record is unclear on whether Appellant was subjected to any individualized assessment for registration purposes in New Jersey or whether his classification was the result of his adjudication. ***See Bodyke***, ***supra*** (Cupp, J., dissenting) (noting that a final judgment was not opened because the sexual offender designation was not the result of a previous judicial determination but a consequence of the crime). Further, Appellant does not address the distinction in this case involving the interplay between Pennsylvania and New Jersey law and how the separation of powers doctrine relates to a differing state's legislative enactments and that legislation's effect on another state's earlier judicial decrees.

Frankly, there exists no action by the executive or judiciary of Pennsylvania that was infringed by the legislature's enactment of SORNA in this matter. Rather, in this case, SORNA's retroactive alteration of registration and reporting requirements would potentially invade the province of a New Jersey court and its decree. As it is unclear from the record whether a branch of the New Jersey government conducted an individualized assessment and determined that Appellant should not be subject to lifetime reporting, we cannot conclusively find that Appellant was

subjected to a violation of the separation of powers doctrine.[5]   Accordingly, we affirm.

Order affirmed.

Judges Ott and Strassburger Concur in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/10/2014

_____

[5]   We are aware that our Declaration of Rights, which predated the federal bill of rights, provides that no person shall "be deprived of his . . . liberty, unless by the judgment of his peers or the law of the land."  PA Const. Art. I, § 9.  Having been duly adjudicated delinquent, Appellant's liberty interest was not infringed by a fifteen-year registration period, the period required by law at the time of his adjudication.  It is more problematic to deprive him of a vested liberty interest by mandating more onerous registration requirements by retrospectively altering the law.  **Cf. Menges v. Dentler**, 33 Pa. 495, 498 (1859) ("The law which gives character to a case, and by which it is to be decided (excluding the forms of coming to a decision), is the law that is inherent in the case, and constitutes part of it when it arises as a complete transaction between the parties.  If this law be changed or annulled, the case is changed, and justice denied, and the due course of law violated.").  Thus, while statutes that retroactively increase registration requirements do not implicate federal *ex post facto* concerns, they may raise additional constitutional problems.

- 13 -