J-S17001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CURTIS ROSS JOHNSON, JR. | |
| Appellant | No. 1731 WDA 2014 |

Appeal from the PCRA Order May 27, 1997
In the Court of Common Pleas of Washington County
Criminal Division at No(s): CP-63-CR-0001636-1994

BEFORE:  GANTMAN, P.J., SHOGAN, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED APRIL 1, 2016**

Appellant, Curtis Ross Johnson, Jr., appeals *nunc pro tunc* from the order entered in the Washington County Court of Common Pleas, which denied and dismissed his first petition filed pursuant to the Post Conviction relief Act ("PCRA") at 42 Pa.C.S.A. §§ 9541-9546.  We vacate, remand for further proceedings, and deny counsel's petition to withdraw.

The PCRA court opinion adequately sets forth the relevant facts and procedural history of this case. Therefore, we will only briefly summarize them.  On August 22, 1993, when he was twenty years old, Appellant and two co-defendants committed a home invasion, and then robbed and murdered the victims (husband and wife) in their home.  Appellant pled guilty on November 1, 1995, to two counts each of first-degree murder,

_____

*Former Justice specially assigned to the Superior Court.

aggravated assault, and robbery, and one count each of burglary, theft by unlawful taking or disposition, receiving stolen property, and criminal conspiracy. On January 5, 1996, the court sentenced Appellant to life imprisonment without the possibility of parole on each murder offense, to be served concurrently, with no further penalties on the remaining offenses. Appellant filed a direct appeal, which was dismissed on March 15, 1996, as untimely.

Appellant timely filed his first PCRA petition *pro se* on January 28, 1997. The PCRA court did not appoint counsel. Instead, by order filed April 24, 1997, the court issued notice of its intent to dismiss without a hearing pursuant to Pa.R.Crim.P. 1507,[1] because the issues raised were "patently frivolous" and without record support. On May 13, 1997, the PCRA court denied Appellant's petition for those reasons. The court reissued an amended order on May 27, 1997, due to a mailing error. Appellant timely filed a *pro se* notice of appeal on June 23, 1997, which was returned as defective on July 8, 1997. Appellant took no further action regarding that appeal, which remained viable, as no party had moved to discontinue it.

Appellant filed a second PCRA petition *pro se* on August 28, 2012.

---

[1] In 1997, notice of intent to dismiss a PCRA petition without a hearing was governed by Pa.R.Crim.P. 1507, which, at the time, gave Appellant ten days to respond to the notice. The rules of criminal procedure were renumbered as of April 1, 2001, and the content of Rule 1507 is currently found under Pa.R.Crim.P. 907, which now gives the defendant twenty days to respond to the notice.

This time the court appointed counsel and, due to a conflict, the court appointed substituted counsel, who filed an amended petition on October 29, 2013. The PCRA court ultimately dismissed the second petition on October 2, 2014, in favor of reinstating Appellant's 1997 appeal from the order denying his first PCRA petition. On October 22, 2014, counsel filed a notice to reinstate the appeal from the denial of Appellant's first PCRA petition. On December 1, 2014, the court ordered counsel to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Counsel timely complied on December 19, 2014, on Appellant's behalf.

As a preliminary matter, counsel has filed a petition to withdraw.[2] "Before an attorney can be permitted to withdraw from representing a petitioner **under the PCRA**, Pennsylvania law requires counsel to file and obtain approval of a 'no-merit' letter pursuant to the mandates of *Turner*/*Finley*." *Commonwealth v. Karanicolas*, 836 A.2d 940, 947 (Pa.Super. 2003) (emphasis in original).

> [C]ounsel must…submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which the petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

*Commonwealth v. Wrecks*, 931 A.2d 717, 721 (Pa.Super. 2007). Counsel

---

[2] In the context of a PCRA petition and request to withdraw, the appropriate filing is a "no-merit" letter/brief. *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988); *Commonwealth v. Finley*, 550 A.2d 213 (1988).

must also send to the petitioner a copy of the "no-merit" letter or brief plus the motion to withdraw and advise the petitioner of his right to proceed *pro se* or with new counsel. ***Id.*** "Substantial compliance with these requirements will satisfy the criteria." ***Karanicolas, supra***.

Instantly, counsel filed a ***Turner/Finley*** brief on appeal and a motion to withdraw as counsel. Counsel listed certain issues Appellant wished to raise on appeal and thoroughly explains why they merit no relief. Counsel sent Appellant a copy of the brief filed on appeal, a copy of counsel's petition to withdraw, and a statement advising Appellant of his right to proceed *pro se* or with private counsel. Thus, counsel appears to have complied with the basic ***Turner/Finley*** requirements. ***See Karanicolas, supra***. Nevertheless, we proceed with an independent review of the case. ***See Turner, supra*** (stating court must conduct independent review and agree with counsel that petition is meritless or appeal is frivolous).

As an equally important prefatory matter, an indigent petitioner is entitled to representation by counsel for a first PCRA petition. ***Commonwealth v. Smith***, 572 Pa. 572, 818 A.2d 494 (2003); ***Commonwealth v. White***, 871 A.2d 1291 (Pa.Super. 2005); ***Commonwealth v. Evans***, 866 A.2d 442, 445 (Pa.Super. 2005). Pennsylvania Rule of Criminal Procedure 904 in relevant part states:

**Rule 904.  Entry of Appearance and Appointment of Counsel; *In Forma Pauperis***

\*    \*    \*

(C) Except as provided in paragraph (H) [relating to death penalty cases], when an unrepresented defendant satisfies the judge that the defendant is unable to afford or otherwise procure counsel, the judge shall appoint counsel to represent the defendant on the defendant's first petition for post-conviction collateral relief.

\*   \*   \*

(E) The judge shall appoint counsel to represent a defendant whenever the interests of justice require it.

(F)   When counsel is appointed,

\*   \*   \*

(2) the appointment of counsel shall be effective throughout the post-conviction collateral proceedings, including any appeal from disposition of the petition for post-conviction collateral relief.

(G) When a defendant satisfies the judge that the defendant is unable to pay the costs of the post-conviction collateral proceedings, the judge shall order that the defendant be permitted to proceed *in forma pauperis* ["*IFP*"].

Pa.R.Crim.P. 904(C)-(G).[3]

While a PCRA petitioner does not have a Sixth Amendment right to assistance of counsel during collateral review, this Commonwealth, by way of procedural rule, provides for the appointment of counsel during a prisoner's first petition for post conviction relief.  Pursuant to our procedural rules, not only does a PCRA petitioner have the "right" to counsel, but also he…has the "right" to effective assistance of counsel.  The guidance and representation of an attorney during collateral review should assure that

---

[3] Previously known as Pa.R.Crim.P. 1504.

meritorious legal issues are recognized and addressed, and
that meritless claims are foregone.

***Commonwealth v. Haag***, 570 Pa. 289, 307-08, 809 A.2d 271, 282-83 (2002), *cert. denied*, 539 U.S. 918, 123 S.Ct. 2277, 156 L.Ed.2d 136 (2003) (internal citations and most quotations marks omitted). This rule-based right to counsel and to effective assistance of counsel extends throughout the post-conviction proceedings, including any appeal from the disposition of the PCRA petition. ***White, supra***. Further, the right remains intact even if the petition is untimely on its face. ***Smith, supra***; ***Commonwealth v. Stout***, 978 A.2d 984, 988 (Pa.Super. 2009).

Importantly, the relevant rules of criminal procedure do not require the petitioner to request appointment of counsel in the PCRA context. ***Commonwealth v. Guthrie***, 749 A.2d 502 (Pa.Super. 2000). "The issue of whether the petitioner is entitled to [PCRA] relief is another matter entirely, which is to be determined after the appointment of counsel and the opportunity to file an amended petition." ***Evans, supra***. Where a petitioner's right to representation has been effectively denied by the action of court or counsel, the petitioner is entitled to have his case remanded to the PCRA court for appointment of counsel to assist with the PCRA petition. ***Commonwealth v. Perez***, 799 A.2d 848 (Pa.Super. 2002).

Instantly, the court sentenced Appellant on January 6, 1996. Appellant timely filed his first PCRA petition on January 28, 1997, but the PCRA court did not appoint counsel. Instead, by order filed April 24, 1997,

the court issued notice of its intent to dismiss the petition without a hearing, because the issues raised were "patently frivolous" and without record support. On May 13, 1997, the PCRA court denied Appellant's petition for those reasons. The court reissued an amended order on May 27, 1997, due to a mailing error. In short, the PCRA court denied Appellant's first petition without ever appointing counsel to assist Appellant with the presentation of his claims. Because this petition represented Appellant's first collateral attack on the judgment of sentence, the court should have instead confirmed Appellant's *IFP* status, his right to counsel, and appointed counsel. ***See Haag, supra***; ***White, supra***. Here, the court effectively denied Appellant his rule-based right to counsel on his first PCRA petition. ***See Perez, supra***. This oversight was articulated throughout the counseled second PCRA proceedings. When the PCRA court ultimately dismissed the second petition in favor of reinstating Appellant's 1997 appeal from the order denying his first PCRA petition, counsel filed an amended notice of appeal from the denial of Appellant's first PCRA petition. In counsel's timely filed, court-ordered Rule 1925(b) statement and on appeal, however, counsel raised several ineffective assistance of trial counsel claims on Appellant's behalf. Further, counsel now seeks to withdraw and argues Appellant's appeal is frivolous. Based upon our independent review of the record, we cannot agree with counsel's assessment of the appeal. ***See Turner, supra***. Here, counsel neglected to raise the patently significant claim that Appellant

was entitled to and was denied assistance of counsel for his first PCRA petition. Essentially, counsel defaulted a major viable issue for Appellant, which is apparent on the face of the record.

Therefore, we conclude that the best resolution of this matter is to vacate the order dismissing Appellant's first PCRA petition and remand the case for further proceedings. *See Perez, supra*. We do so without reference to the merits of the issues raised in this appeal. *See Evans, supra*. We intend to place Appellant in the same position he occupied when he initially filed his *pro se* PCRA petition in 1997. Upon remand, the court shall relieve current counsel and appoint new counsel, who must consult with Appellant and file an amended first PCRA petition or a proper "no-merit" letter that addresses Appellant's claims. Accordingly, we vacate the May 27, 1997 order denying and dismissing Appellant's first PCRA petition and remand for further proceedings consistent with this decision.

Order vacated; case remanded for further proceedings; counsel's petition to withdraw is denied. Jurisdiction is relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/01/16

- 8 -

To: Curtis Johnson by certified mail; Thomas P. Agrafiotis, Esq.; District Attorney; File

## IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA
### CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | ) | |
| | ) | |
| vs. | ) | No.   1636-1994 |
| | ) | |
| CURTIS ROSS JOHNSON | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION PURSUANT TO Pa. R.A.P. 1925(a)

Curtis Johnson appeals from Judge Thomas D. Gladden's May 1997 order denying relief under the Post-Conviction Relief Act (PCRA). This opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

### BACKGROUND

The factual and procedural history of this case spans a period of more than thirty years from the commission of the offense to this appeal. The following is a timeline of relevant events.

*The Crime and Arrest*

On the evening of August 22, 1993, Charles Lee Richert and Rose Richert, a married couple in their eighties, were strangled, stabbed, and beaten to death in their home in Cecil, Pennsylvania. According to the testimony of Pennsylvania State Trooper Beverly J. Ashton, the lead investigator on the case, Curtis Johnson, along with Justin Secreti and Fred Stewart, planned to rob the Richerts on the night of the homicide and killed them in the course of the robbery, making off with approximately $10,000 in cash.[1] Guilty Plea Transcript, November 1, 1995, pp. 10-11.

---

[1] Secreti lived only a few doors down the street from the Richerts and apparently was aware that the Richerts kept cash in their home. Sentencing Transcript, January 5, 1996, pp. 21-22.

1

Stewart remained in the car while Johnson and Secreti knocked on the front door of the residence and, when Rose answered the door, Johnson struck in the head with the butt of a gun several times, eventually convincing Rose to relinquish her money to them. *Id.* at 11. After obtaining the money, Secreti and Johnson began to leave the residence but decided to return to kill the Richerts, striking Charles Lee and Rose in the head with a hammer and stabbing Rose in the neck, killing them both. *Id.* Following the homicide, the trio proceeded to the residence of Johnson's ex-girlfriend, Michelle Knight – where Secreti and Stewart admitted to Knight and three other individuals at the residence their involvement in the crime. Warrant Application dated September 1, 1994.

After a year-long investigation by Pennsylvania State Police (PSP), on September 1, 1994, Magistrate Judge Paul Pozonsky issued an arrest warrant for Curtiss Johnson on several charges related to this crime including criminal homicide. The arrest warrant issued by Magistrate Judge Pozonsky relied on evidence gathered by Trooper Ashton including (1) the admissions of Secreti and Stewart at the Knight residence, (2) a consensual phone intercept of Stewart in which he admits his involvement in the crime, and (3) a statement by Michelle Knight and her mother indicating that Johnson had blood on his pants when he arrived at their home on the night of the homicide.

*The Confession, Guilty Plea, and Sentencing*

On the morning of September 1, 1994, after being arrested, Johnson provided a verbal confession to Ashton and two other troopers at the State Police Barracks in Washington, PA, though the precise nature of this statement is unclear. Omnibus Pretrial Motion filed September 25, 1995. At Johnson's Bond Reduction Hearing on October 25, 1994, he admitted before the

2

Court that he did, in fact, make a confession to PSP.[2] Bond Reduction Hearing, October 25, 1994, p. 47. Johnson eventually pleaded guilty to murder one before Judge Gladden on November 1, 1995 in exchange for the Commonwealth's agreement to not seek the death penalty. The same day, Johnson and Attorney Sichko signed a nine page Guilty Plea Colloquy which provided an extensive explanation of the rights waived by his plea and in which Johnson specifically affirmed its voluntariness. Judge Gladden sentenced Johnson to life without parole on January 5, 1996.

**Johnson's Direct Appeal and First PCRA**

On March 15, 1996, Johnson filed a Notice of Appeal and accompanying Petition to Proceed *In Forma Pauperis*, which was denied by Judge Gladden the same day as untimely. Then on January 28, 1997, Johnson, proceeding *pro se*, filed his first PCRA, alleging (1) ineffective assistance of counsel based on Attorney Sichko's failure to investigate the case and interview character witnesses identified by Johnson and (2) unlawful inducement of guilty plea based on Sichko "pressing" him into pleading guilty by informing him the Commonwealth would seek the death penalty at trial. Judge Gladden issued an April 23, 1997 order noticing his intent to dismiss Johnson's PCRA without a hearing unless Johnson responded within ten days. On May 13, 1997, after receiving no response from Johnson, Judge Gladden dismissed Johnson's PCRA, giving him thirty days to appeal.[3]

On June 23, 1997, Johnson filed with the Superior Court a Notice of Appeal of the April 23 order, which really was an appeal of the May 13 order, but, at any rate, the Superior Court returned it to the Washington County Clerk of Courts as defective on July 8, 1997 because

---

[2] In an Omnibus Pretrial Motion filed September 25, 1995, Johnson attempted to suppress this confession, alleging that it was involuntary because Johnson was "heavily medicated" at the time. In an order dated October 24, 1995, Judge Gladden denied the Motion to Suppress as untimely, without addressing its merits.

[3] Because of a mailing error, Judge Gladden reissued the denial order on May 27, 1997.

3

Johnson failed to submit the required filing fee or *In Forma Pauperis* order. The Clerk of Courts informed Johnson of this defect in a letter dated July 14, 1997 and instructed him to submit the required order or filing fee, which he never did. As a result, the Superior Court never reviewed Judge Gladden's denial.

**Johnson's Second PCRA and Reinstatement of Appellate Rights on his First Petition**

Johnson remained silent until August 28, 2012, when he filed a second *pro se* PCRA petition, this time alleging that his sentence of life without parole was a cruel and unusual punishment under *Miller v. Alabama*, 132 S. Ct. 2455 (2012) despite acknowledging that he was not a juvenile at the time of the crime. Ultimately, in an order dated October 2, 2014, this Court dismissed Johnson's second PCRA and ordered him to re-submit a Notice of Appeal to the Pennsylvania Superior Court with the required filing fee or *In Forma Pauperis* order, effectively reinstating the appeal of his first PCRA. In the accompanying opinion, this Court acknowledged that Johnson was not appointed counsel on his first PCRA as then required under Pa.R.Crim.P. 1504 and, as a remedy, appointed Thomas P. Agrafiotis to represent Johnson on his reinstated appeal before the Superior Court. On December 19, 2014, Agrafiotis filed a Concise Statement of Matters Complained of on Appeal, which is the subject of this opinion.

## ISSUES ON APPEAL

In his Concise Statement, Johnson asserts that he is eligible for relief under the following subsections of the act:

(i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

4

(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

42 Pa.C.S. § 9543(a)(2). More specifically, he claims that he was denied his Sixth Amendment right to counsel and that Sichko was ineffective by (1) failing to investigate and utilize exculpatory evidence, (2) failing to interview known character witnesses, and (3) failing to investigate/interview known alibi defenses/witnesses. He also claims that Sichko "persuaded" him to plead guilty by telling him the Commonwealth would seek the death penalty if he opted for trial.

## I.    Ineffective Assistance of Counsel and Sixth Amendment Right to Counsel

Johnson's Sixth Amendment claim appears to be based *wholly* on the alleged ineffectiveness of his counsel as he does not raise any claim concerning denial of counsel at any critical stage in his proceedings. Accordingly, we will treat his Sixth Amendment claim as an ineffective assistance claim.

The standard applicable to such claims is well worn; to succeed on such a claim, Johnson must plead and prove by a preponderance of the evidence that (1) the underlying claim has arguable merit, (2) counsel did not have a reasonable basis for his action or inaction, and (3) he suffered prejudice, or in other words – a reasonable probability that the outcome of the proceedings would have been different, as a result of this action or inaction. *Com. v. Steele*, 961 A.2d 786, 797 (Pa. 2008). Counsel is presumed to be effective and Johnson bears the burden of proving otherwise. *Com. v. Harris*, 972 A.2d 1196, 1203 (Pa. Super. 2009). Where it is clear that he has failed to meet any one of the three prongs, his claim may be disposed of on that basis alone – without a determination of whether the other two prongs have been met. *Steele*, at 797.

We note that ineffective assistance of counsel claims are not self-proving, and Johnson cannot prevail on undeveloped claims consisting of boilerplate allegations. *Id.* (internal

5

quotations and citations omitted); *see also Com. v. Pierce*, 786 A.2d 203, 221 (Pa. 2001) (petitioner cannot prevail on an ineffective assistance claim absent an "analysis of the record or specific allegations of how [counsel's] failure . . . prejudiced him."). All of Johnson's ineffective assistance claims suffer from this defect.

We also note, before addressing the substance of Johnson's claims, that he signed a nine page plea colloquy in exchange for the Commonwealth's agreement to not seek the death penalty in which he voluntarily admits committing the offense of homicide. In addition, Judge Gladden advised Johnson as follows at his plea hearing.

THE COURT: You have had an opportunity to talk with Mr. Sichko?

THE DEFENDANT: Yes, sir.

THE COURT: Your mother is here with you?

THE DEFENDANT: Yes, sir.

THE COURT: Is that right?

THE DEFENDANT: Yes, sir.

THE COURT: Is your mind free and clear?

THE DEFENDANT: Yes, sir.

THE COURT: Is the plea that you're entering today mad voluntarily and of your own free will?

THE DEFENDANT: Yes, sir.

\* \* \*

MR PETTIT: But so that the record is clear, however, Your Honor, if in the event we had to proceed to trial with one of these individuals, the Commonwealth at that time would be seeking the death penalty.

THE COURT: I understand you have offered them life in exchange for a plea.

MR. PETTIT: That is correct.

Guilty Plea Transcript, pp. 40-44.

*1. Failure to Investigate and/or Utilize Exculpatory Evidence and Information*

Johnson has not pleaded with any degree of particularity what exculpatory evidence Sichko failed to investigate beyond stating in his *pro se* petition that "I was not present in the residence when the incident occurred." Accordingly, this claim fails as undeveloped under *Pierce*. Even so, Johnson's unsupported alibi claim is directly contradicted by his plea colloquy, in which he admits his *actual* guilt, and no conceivable evidence would be sufficient to overcome this voluntary admission.

*2. Failure to Investigate, Interview and/or Utilize Known Character Witnesses*

Johnson has not pleaded with any degree of particularity what witnesses his counsel failed to investigate beyond stating in his *pro se* petition that "I had numerous character witnesses that were willing to testify on my behalf. Nevertheless attorney Francis Schieko [sic] failed to investigate, interview or utilize these witnesses . . ." This claim similarly fails as undeveloped under *Pierce, supra*. At any rate, the alleged failure to present character witnesses could not have prejudiced Johnson as he specifically bargained for a life sentence, rather than potential death, in his plea bargain. Guilty Plea Transcript, p. 42. Because of his plea bargain, the presentation of character witnesses would have been of no use to him.

*3. Failure to Investigate, Interview and/or Utilize a Known Alibi Defense and Alibi Witness/Witnesses*

This claim mirrors Johnson's exculpatory evidence claim and appears to be based on Johnson's unsupported averment that he was not at the residence at the time of the incident. Again, this is contradicted by his own signed admissions and likewise fails as undeveloped.

7

## II. Plea of Guilty Unlawfully Induced

A defendant has no absolute right to withdraw a guilty plea, and the decision to grant such a motion lies within the sound discretion of the trial court. *Com. v. Muhammad*, 794 A.2d 378, 382 (Pa. Super. 2002). The standard for withdrawal of a guilty plea *after* imposition of sentence requires a showing of manifest injustice, or in other words, involuntariness. *Id.*

Johnson claims that his plea was involuntary because Sichko "persuaded" him to plead guilty by informing him the Commonwealth would seek the death penalty if he opted for trial. Johnson raised this claim for the first time *after sentencing* in his first PCRA and, as a result, must demonstrate manifest injustice to void it.

Sichko *accurately* informing Johnson of the Commonwealth's intention to seek the death penalty if he did not plead guilty does not constitute manifest injustice, or any injustice at all; it was a necessary disclosure for Johnson to intelligently evaluate the Commonwealth's plea bargain. Johnson does not allege that he was otherwise treated unfairly or coerced into the plea in any other way and, in fact, his own plea colloquy set out above belies any such claim. *See Muhammad, supra* at 382 (a plea bargain should not be set aside in the absence of convincing evidence that the appellant was dealt with indecently or unfairly).

## CONCLUSION

The findings by the PCRA Judge Thomas Gladden that the defendant's issues on appeal were patently frivolous and without support in the record, and the order dismissing the PCRA should be affirmed.

8

BY THE COURT:

KATHERINE B. EMERY, JUDGE

January 8, 2015

9