J-S43001-17

2017 PA Super 353

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOHN DAVID WOEBER | |
| Appellant | No. 721 WDA 2016 |

Appeal from the Judgment of Sentence April 15, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No: CP-02-009746-2015

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOHN DAVID WOEBER | |
| Appellant | No. 1289 WDA 2016 |

Appeal from the Order July 22, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No: CP-02-0009746-2015

BEFORE:  STABILE, J., SOLANO, J., and FITZGERALD, J.[*]

OPINION BY STABILE, J.:                    **FILED NOVEMBER 9, 2017**

---

[*] Former Justice specially assigned to the Superior Court.

Appellant, John David Woeber, appeals from the judgment of sentence imposed on April 15, 2016, in the Court of Common Pleas of Allegheny County following his convictions of rape, sexual assault, and related crimes,[1] all stemming from events involving A.R. when she was between 12 and 14 years old. Appellant also appeals from the order entered on July 22, 2016, adjudicating him a sexually violent predator ("SVP"). By order entered on December 16, 2016, we consolidated the appeals.[2] For

---

[1] Appellant's convictions included one count each of rape, unlawful contact with a minor, indecent assault—person less than 13 years of age, indecent exposure, unlawful contact with a minor, indecent assault—person less than 16 years of age, corruption of minors, and endangering the welfare of children. 18 Pa.C.S.A. §§ 3121(c), 6318(a)(1), 3126(a)(7), 3127(a), 6318(a)(1), 3126(a)(8), 6301(a), and 4304(a)(1), respectively.

[2] As noted, Appellant filed two separate appeals. His appeal from the April 15, 2016 judgment of sentence was filed prior to this Court's decision in **Commonwealth v. Schrader**, 141 A.3d 558 (Pa. Super. 2016). In **Schrader**, we held that when a defendant waives a pre-sentence SVP determination, his judgment of sentence is not final until the SVP determination is rendered. **Id.** at 561. Here, Appellant waived his right to a pre-sentence SVP hearing. **See** Notes of Testimony ("N.T."), SVP Hearing, 7/22/16, at 4. He then filed a separate notice of appeal from the SVP order. Since Appellant filed appeals to preserve the issues raised with respect to both orders, we find we have jurisdiction to consider these appeals, even though post-**Schrader**, only a single notice of appeal would have been necessary once the SVP determination was made thereby making the judgment of sentence final as of that time. By order entered December 16, 2016, we granted Appellant's motion to consolidate the appeals pursuant to Pa.R.A.P. 513.

the reasons stated herein, we vacate the judgment of sentence and remand for further proceedings.

Appellant asks us to consider four issues, which we have reordered for ease of discussion:

  I.    Whether the [t]rial [c]ourt erred by excluding highly exculpatory and contradictory testimony from the accuser in this case, where the case turned on the accuser's credibility and where the exclusion of such testimony ran afoul of [Appellant's] right to confront and cross-examine witnesses against him.[3]

  II.   Whether the [t]rial [c]ourt erred in concluding that [Appellant] qualified as a sexually violent predator where the court relied upon contradictory evidence in finding that [Appellant] suffered from a specific mental abnormality.

  III.  Whether the prosecutor's improper vouching for the accuser in this case so prejudiced [Appellant] that the jury was unable to render a fair and impartial verdict in this case.

  IV.   Whether the [t]rial [c]ourt abused its discretion by denying [Appellant's] request for a new trial, or, in the alternative, in ruling on the request without an evidentiary hearing.

Appellant's Brief at 4.

In his first issue, Appellant presents a challenge to the trial court's ruling on admissibility of evidence. As our Supreme Court has explained, "[t]he admissibility of evidence is a matter solely within the discretion of the

---

[3] The Commonwealth contends Appellant has waived two of the three subparts of his issue. *See* Commonwealth Brief at 13. We disagree, finding that the specific claims in Appellant's brief are subsidiary to the error alleged in Appellant's Rule 1925(a) statement relating to attempts to cross-examine A.R. about her alleged statement to La. *See* Pa.R.A.P. 1925(b)(4)(v).

trial court. This Court will reverse an evidentiary ruling only where a clear abuse of discretion occurs." ***Commonwealth v. Johnson***, 638 A.2d 940, 942 (Pa. 1994) (citation omitted)). "Generally, an appellate court's standard of review of a trial court's evidentiary rulings is whether the trial court abused its discretion; however, where the evidentiary ruling turns on a question of law our review is plenary." ***Buckman v. Verazin***, 54 A.3d 956, 960 (Pa. Super. 2012) (citations omitted).

In order to examine the propriety of the trial court's evidentiary ruling, we must consider the factual background of this case. Having reviewed the record, we find the trial court fairly summarized the trial testimony as follows:

> At trial, the victim in this case, fifteen year old [A.R.] testified that in 2013, while she was twelve years old, she was friends with [La. and Li.] Woeber, two daughters of Appellant, John Woeber.[4] [A.R.] testified that she went to [Li.'s] birthday party in the spring of 2013. She testified that Appellant had sexual intercourse with her against her will at the party. She stated that she was invited over for salmon ([Li.'s] favorite meal) and cake. After dinner, others present were drinking alcohol but [A.R.] was not until [Li.] gave [A.R.] a drink that [A.R.] did not know contained alcohol. Shortly after drinking the one cup that [Li.] gave [A.R.], [A.R.] was accosted in Appellant's residence by a group of boys. The boys tried to pull her clothes off. Appellant interceded and stopped the boys from doing anything further to [A.R.]. The boys left the apartment, along with [La. and Li.], leaving Appellant and [A.R.] alone in Appellant's apartment. [A.R.] fell asleep on the couch, and was

_____

[4] La. was in A.R.'s grade in school. Li. was two grades ahead of them. The birthday party was for Li.'s 14th birthday, which was March 17, 2013.

awoken by Appellant, who told her to go to his bedroom to process what had happened to her. She was able to walk to his bedroom but "felt like everything was a little bit blurry." Once she reached Appellant's bedroom, Appellant got on top of her and tried to take her clothes off. [A.R.] stated that she told him no and he left for a minute or two into the bathroom. When Appellant came back into the room, wearing only boxers, he got on top [of] her again, removed her shorts and underwear and his boxers, and had sexual intercourse with her. [A.R.] stated that she does not remember what happened after that, until she awoke the next morning on Appellant's bed wearing only her tank top.

[A.R.] further testified to a prior incident in the Woeber home. She stated that she was hanging out with [La. and Li.] at their house. In the middle of the night, Appellant came into the bathroom while [A.R.] was washing her hands. She testified that he pushed her up against the vanity, touched her breasts and groped her. She did not tell anyone about this incident because she felt scared and in disbelief.

After the second incident, Appellant, [La. and Li.] moved back to Alaska for approximately six months.[5] Upon their return, [A.R.] resumed her friendship with [La. and Li.] and again frequented the Woeber residence. [A.R.] testified that she attended a party there when she was thirteen years old. [A.R.] stated that Appellant supplied her and other underage attendees with alcohol and had sexual intercourse with her on the couch that night. He undressed her and penetrated her vagina with his penis. She didn't tell anyone what happened because she didn't want to answer questions about why she returned to the Woeber household. She testified that she had returned to the home because she was told Appellant would not be in the home and she wanted to remain friends with [Li. and La.]. After the third incident, [A.R.] experienced panic attacks and struggled academically. [A.R.] disclosed the abuse to her school guidance counselor in the spring of 2015.

_____

[5] Appellant and Li. testified that the move to Alaska took place in June 2013, at the end of the school year. The family moved back to Pittsburgh in the fall of 2013, around Thanksgiving. N.T. Trial, 1/14/16, at 152, 156, 181-82.

[Li. and La.] both testified on behalf of their father. [Li.] denied any underage drinking and said she never saw or heard any inappropriate sexual contact between Appellant and [A.R.]. [La.] also denied underage drinking at [Li.'s] party. She testified that nothing unusual happened that night. She further testified that the second party testified to by [A.R.], where [A.R.] said Appellant raped her a second time, simply never happened.

Lastly, Appellant denied ever touching [A.R.] inappropriately. He also denied ever having permitted boys into his home or providing alcohol to minors.

Rule 1925(a) Opinion, 11/15/16, at 4-5 (references to Notes of Testimony omitted).

The alleged prior inconsistent and exculpatory statement attributed to A.R. is her statement to La. that "two other boys" raped her at Li's birthday party. N.T. Trial, 1/13/16, at 78. On direct examination, the prosecutor asked A.R. if she ever spoke with La. or Li. about the parties. *Id.* at 52. A.R. responded, "Yeah. They had said that they didn't remember any party happening." *Id.*

On cross-examination, the following exchange took place between Appellant's counsel and A.R.:

Q. So you were asking [La.] about, you say, the party that happened at their house, and she said, "What party?" Right?

A. Yeah. She denied it.

Q. You didn't tell her that something happened at that party where her father had raped you, did you?

A. No.

Q. Did you tell her, in fact, that other boys had raped you at that party?

- 6 -

A. No.

Q. You don't remember saying that to her?

*Id.* at 77. At that point, the prosecutor objected, claiming rape shield.[6] A sidebar discussion followed, during which Appellant's counsel explained his intention to call La. to testify that—following the Woeber family's return from Alaska—"[A.R.] had said to her, you know, 'Something happened at this party at your house,' and that she said, 'I was raped by two other boys.'" *Id.* at 78. Appellant's counsel contended that A.R. was accusing someone else of committing the rape that she accused Appellant of committing on the

_____

[6] The Rape Shield Law, 18 Pa.C.S.A. § 3104 (Evidence of victim's sexual conduct), provides:

> **(a) General rule.**--Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.
>
> **(b) Evidentiary proceedings.**--A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

night of Li.'s party. He also argued that rape shield was inapplicable because it was not A.R.'s sexual conduct at issue but, rather, a prior sexual assault. *Id.* at 78-79.

The trial court announced a recess and continued the discussion with counsel in open court. The trial court advised Appellant's counsel that advance notice of the issue would have been appreciated so that the trial court could have conducted an in camera hearing as required by ***Commonwealth v. Black***, 487 A.2d 396 (Pa. Super. 1985). ***See also*** 18 Pa.C.S.A. § 3104(b). Appellant's counsel responded that his review of the law indicated that he was not presenting a rape shield issue but an issue of credibility. The trial court responded that the question was "close to the line" and that counsel should have made a proffer that would have led the court to hold a § 3104(b) evidentiary hearing. The court cited ***Commonwealth v. Fink***, 791 A.2d 1235 (Pa. Super. 2002), for the proposition that prior sexual conduct involving a prior sexual assault does not trigger the Rape Shield Law and that the evidence is to be evaluated under general evidence admissibility criteria. N.T. Trial, 1/13/16, at 86. However, the court again noted that counsel should have made a proffer to the court so the court could determine whether rape shield applies. *Id.*

The prosecution argued the defense was engaged in a veiled attempt to pierce the Rape Shield Law. *Id.* at 87. The court announced its intention to sustain the objection, strike the question from the record, and leave it up

to the defense to question La. in its case-in-chief. The prosecution could then call A.R. on rebuttal to affirm or deny the allegation. *Id.* at 91.

At that point, for reasons unrelated to the case, the trial court dismissed the jurors for the day. When the trial court met with counsel the following morning, further discussion ensued regarding rape shield. The trial court noted that, based on the understanding that the statement concerning the rape by two boys referred to events on the same night A.R. claimed Appellant assaulted her, "it is highly probative with regard to credibility and not excluded by rape shield." *Id.* at 97.

The prosecution complained that there were no interviews with A.R. addressing her alleged conversation with La. *Id.* at 98. The trial court reiterated that a § 3104(b) motion in limine should have been filed so that the issue could have been resolved following an in camera hearing. *Id.* at 98-99. Ultimately, the trial court determined that the objection would be sustained, cross-examination of A.R. would continue, and the issue would be addressed again if it came up during the defense case. *Id.* at 102.

In the defense case, Li. testified first. She explained that the only people with her at her birthday party were her father, her sister La., and A.R. She indicated that her father was "really strict back then" and "would never let us have boys over." *Id.* at 142. She also stated that no one was drinking and that when A.R. left the following day, she did not say anything about anything unusual happening the night before. *Id.* at 142-43. Li. later

repeated those responses. *Id.* at 151-52. She also testified that she never heard anything about A.R. being raped at either of her family's apartments or about A.R. being sexually assaulted in the bathroom of their old apartment. *Id.* at 153-54.

La. testified next. She explained that she and A.R. were very close and recalled that A.R. spent the night after Li.'s birthday party in 2013. *Id.* at 162-63. She said "nothing unusual happened so nothing stuck out to really remember" about that night. *Id.* at 163. She testified that there were no boys or alcohol in the apartment and that A.R. never mentioned that anything happened that night. *Id.* at 164-65. She explained that after she returned from Alaska, she and A.R. maintained their friendship for another three or four months before it "faded." *Id.* at 165. La. also testified that when A.R. mentioned a party at La.'s house, La. responded that "there was no party." *Id.* La. could not recall A.R. being at her apartment after the Woebers returned from Alaska. *Id.* at 166.

Following deliberations, the jury returned a verdict of guilty on the charges listed above.[7] The trial court sentenced Appellant to 180 to 400 months in prison for rape, with consecutive probation of five years for

_____

[7] *See* n. 1. Appellant was acquitted of two counts of selling or furnishing liquor to minors, statutory sexual assault, and one count of indecent exposure.

unlawful contact with a minor. The court did not impose any further penalty on the remaining convictions.

Appellant argues that the exclusion of A.R.'s purported statement—accusing other boys of raping her on the night of Li.'s party—constitutes the exclusion of exculpatory and inconsistent testimony by his accuser, violating his confrontation rights. As stated above, while we generally employ an abuse of discretion standard to admissibility issues, our review is plenary where, as here, the evidentiary ruling turns on a question of law. **Buckman**, 54 A.3d at 960.

Our Supreme Court has recognized that "[t]he Sixth Amendment guarantees criminal defendants the right to confront and cross-examine adverse witnesses" in order "to ensure a fair and reliable trial." **Commonwealth v. Laird**, 988 A.2d 618, 630 (Pa. 2010); U.S. Const. amend. VI (additional citations omitted). "Cross-examination may be employed to test a witness' story, to impeach credibility, and to establish a witness's motive for testifying." **Commonwealth v. Ballard**, 80 A.3d 380, 394 (Pa. 2013) (quoting **Commonwealth v. Chmiel**, 889 A.2d 501, 527 (Pa. 2005) (citation omitted)). "A trial court has discretion to determine both the scope and the permissible limits of cross-examination. The trial judge's exercise of judgment in setting those limits will not be reversed in the absence of a clear abuse of that discretion, or an error of law. **Commonwealth v. Briggs**, 12 A.3d 291, 335 (Pa. 2011) (quotations and

citations omitted). "It is certainly within the scope of cross-examination to ask the witness if she ever made a statement inconsistent with her testimony in court." *Chmiel*, 889 A.2d at 542 (citing Pa.R.E. 613).[8]

Again, this Court has recognized that "[i]f the prior sexual conduct was a prior sexual assault, then the Rape Shield Law does not apply and the evidence is evaluated under the general evidentiary rules." *Fink*, 791 A.2d at 1242 (citing *Johnson*, 638 A.2d 940 (Pa. 1994)[9]). In *Johnson*, our Supreme Court reiterated that "[e]vidence is relevant when the inference sought to be raised by the evidence bears upon a matter in issue in the case and, second, whether the evidence renders the desired inference more probable than it would be without the evidence." *Id.* at 942 (internal quotation and citation omitted). Therefore, because rape shield does not apply to a prior sexual assault on A.R., the question here becomes whether A.R.'s response on cross-examination—had the objection been overruled— coupled with La.'s anticipated testimony about A.R.'s statement in the

---

[8] The Commonwealth contends the trial court's ruling was based on the lack of foundation for A.R.'s statement, claiming A.R. testified that she never disclosed the March 2013 sexual assault before revealing it to her guidance counselor in 2015. Commonwealth Brief at 19. In fact, A.R. testified that the guidance counselor was the first person she told "in detail." N.T. Trial, 1/13/16, at 73.

[9] Our Supreme Court explained that "[t]o be a victim is not 'conduct' of the person victimized. It would be illogical to conclude that the Rape Shield Law intended to prohibit this type of testimony." *Johnson*, 638 A.2d at 942.

defense case, would be relevant to a material fact in issue and probative of A.R.'s credibility. *See also Commonwealth v. Schley*, 136 A.3d 511, 518 (Pa. Super. 2016) (under *Johnson's* "relevant and material" test, proffered evidence was probative of an element of the crime and relevant to the accuser's credibility). We conclude that the testimony is relevant to a material fact in issue in this case, *i.e.*, the issue of whether someone other than Appellant raped A.R. on the night of Li.'s party, and is relevant to the issue of A.R.'s credibility. Further, that evidence would support an inference that someone other than Appellant raped A.R., and would clearly make that inference more probable than it would be without the evidence. *See Johnson*, 638 A.2d at 942. As Appellant argues,

> Here, the proffered evidence goes directly to the heart of the Commonwealth's case insofar as [A.R.'s] statement made it much less likely that [Appellant] was the one who assaulted her on the night of the party. Specifically, it suggested that "two other boys" raped her at the party—and in turn supports the strong inference that [Appellant] was not the person who raped her. Moreover, by presenting a potentially inconsistent prior statement, the proffered evidence also undermined [A.R.'s] credibility.

Appellant's Brief at 23 (citations omitted).

While we agree with the trial court's conclusion that the alleged sexual assault by "two other boys" did not trigger the Rape Shield Law, we find the court committed an error of law by sustaining the Commonwealth's objection during cross-examination of A.R., and erred by failing to evaluate the evidence concerning A.R.'s statement under traditional evidentiary rules.

Had it done so, the court would have had the opportunity to consider whether the evidence made it less likely that Appellant assaulted A.R. As a result of the court's error, there is nothing in the record to suggest that A.R. told La. that two boys raped her at Li.'s party, other than the sidebar statement made by Appellant's counsel. Further, there is nothing of record to suggest that La. would testify that A.R. claimed two boys raped her.

We find the trial court erred by sustaining the Commonwealth's objection. In doing so, the trial court violated Appellant's confrontation rights because it barred the cross-examination of A.R. about a prior statement implicating assailants other than Appellant. In addition, it put Appellant's counsel in the position of trying to raise the issue in the defense case-in-chief without a foundation for doing so and in the face of inevitable hearsay objections. Therefore, we are compelled to vacate Appellant's judgment of sentence and remand for a hearing.

As for the proceedings on remand, we find guidance in this Court's decision in **Commonwealth v. Eck**, 605 A.2d 1248 (Pa Super. 1992), a case in which the appellant claimed his confrontation rights were violated by the court's decision to withhold materials relating to his accuser. Because the trial court had not placed on the record any findings or conclusions relating to its in camera review of the records, we directed on remand that the trial court conduct in camera proceedings after which the trial court could grant a new trial or reinstate the judgment of sentence. **Id.** at 1256.

Our Supreme Court adopted this procedure in **Commonwealth v. Ruggiano**, 26 A.3d 473 (Pa. 2011) (*per curiam*) (citing **Eck**). In **Ruggiano**, as in the case before us, the victim's past sexual conduct was not at issue. Therefore, the Rape Shield Law does not apply and the trial court must determine whether the evidence sought to be admitted as to A.R. is admissible under the traditional rules of evidence. **Id.** (citing **Johnson**, 638 A.2d at 942).

Accordingly, we direct the trial court on remand to conduct *in camera* proceedings for the limited purpose of determining whether A.R. would deny telling La. that two boys raped her at Li.'s party and whether La. would testify that A.R. made such a statement. In the event the trial court finds A.R. and/or La. would offer such testimony, the court should then consider whether that testimony is admissible under traditional evidentiary rules. If the testimony is admissible, the trial court shall grant a new trial and permit cross-examination of A.R. concerning the purported statement. If A.R. denies making the statement and La. denies that A.R. claimed she was raped by other assailants, or if the trial court determines their testimony is inadmissible, the trial court shall reinstate the judgment of sentence.

If the trial court grants a new trial, Appellant's remaining issues become moot. However, recognizing that the trial court could potentially reinstate the judgment of sentence, we shall address those issues.

In his second issue, Appellant challenges the trial court's determination that he is an SVP. In **Commonwealth v. Schrader**, 141 A.3d 558 (Pa. Super. 2016), this court explained:

> It is well-settled that an SVP order is a non-punitive collateral consequence of the criminal sentence. **Commonwealth v. Harris**, 972 A.2d 1196, 1201 (Pa. Super. 2009). . . . "[T]he imposition of SVP status is a **component** of the judgment of sentence even though the ultimate collateral consequences are non-punitive." **Harris, supra**, at 1201 (emphasis added).

**Id.** at 561-62. By vacating Appellant's judgment of sentence, we also have vacated the July 22, 2016 SVP order that constituted a component of that judgment of sentence. In light of the possibility the trial court on remand could reinstate the judgment of sentence, we consider Appellant's challenge to his SVP designation.

As a challenge to the sufficiency of evidence supporting an SVP designation, Appellant presents a question of law; "thus, our standard of review is de novo and our scope of review is plenary." **Commonwealth v. Meals**, 912 A.2d 213, 218 (Pa. 2006) (internal quotation and citation omitted)). "In conducting [a] sufficiency review, we must consider the evidence in the light most favorable to the Commonwealth, which prevailed upon the issue at trial." **Id.** (citation omitted). The task of this Court "is one of review, and not of weighing and assessing evidence in the first instance." **Id.** at 223.

In **Meals**, our Supreme Court recognized that the Commonwealth must prove SVP status to the trial court by clear and convincing evidence;

- 16 -

that the defense has the opportunity to challenge the Commonwealth's evidence and to present its own evidence; and that the trial court may reject the Commonwealth's evidence. *Id.* at 224. The "clear and convincing" standard falls between the criminal "beyond a reasonable doubt" standard and the civil "preponderance of the evidence" standard. *Id.* at 219. The "clear and convincing" standard is typically defined as follows: "The clear and convincing standard requires evidence that is 'so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [in] issue.'" *Id.* (quoting *Commonwealth v. Maldonado*, 838 A.2d 710, 715 (Pa. 2003) (citations omitted)).

Appellant complains that the trial court erred by relying solely upon A.R.'s age at the time of the first two incidents in rendering its SVP determination. He complains that "this reliance ignored the ambiguous testimony offered by [the Commonwealth's expert] at the SVP hearing with respect to what facts are necessary for a diagnosis of pedophilia," and falls short of the clear and convincing standard. Appellant's Brief at 35. He further contends that despite the fact A.R. was twelve at the time of the first two incidents, there is no evidence to support a finding that she was "prepubescent." *Id.* at 37. We cannot agree.

In his statement of errors complained of on appeal, Appellant simply asserted that, recognizing the threshold is "clear and convincing" evidence,

- 17 -

"the evidence presented was insufficient to meet the requisite burden to classify [Appellant] as an SVP." Concise Statement, 9/12/16, at ¶¶ 7-9. As the trial court noted, Appellant "did not clarify whether the sufficiency challenge related to the Paraphilia diagnosis or the predatory conduct finding. It matters not, since both elements were supported by clear and convincing evidence." Trial Court Rule 1925(a) Opinion, 11/15/16, at 10. As the court explained, a SOAB member testified as an expert for the Commonwealth.

> [The expert's] uncontroverted expert opinion was that Appellant suffered from Paraphilic Disorder, based on the victim being under the age of twelve when the abuse occurred.[10] [The expert] specifically testified that the diagnosis and the risk to reoffend remains even after the victim ages beyond thirteen years old. [The expert] testified that his opinion was given to a reasonable degree of medical certainty. Appellant offered no evidence to refute this evidence, which this [c]ourt found credible.
>
> Furthermore, the record reflects that Appellant established a predatory relationship with the victim for the purpose of sexual victimization. Of particular note is [Appellant's] behavior at the party where, after providing the victim alcohol, he interrupted boys who were harassing her, thereby creating an element of trust, and then took her into his bedroom where she was isolated and available to him for his own sexual purposes. Evidence also established that he reached out to her following his return to Alaska to reestablish a relationship that was

---

[10] The trial court's reference to A.R. being "under the age of twelve" appears to be nothing more than oversight. It is undisputed in the record that she was twelve when the first two incidents occurred in the spring of 2013 and the expert did not suggest otherwise. Although Appellant attempts to make an issue out of the oversight, Appellant acknowledges A.R. was twelve in the spring of 2013. Appellant's Brief at 37.

- 18 -

flirtatious in nature. These facts support [the expert's] testimony and this [c]ourt's conclusion beyond a clear and convincing standard, and this [c]ourt did not err in determining Appellant to be a sexually violent predator.

*Id.* at 10. Again, it is not this Court's role to reweigh the evidence. ***Meals***, 912 A.2d at 223. Just as in ***Meals***, the SVP determination here was not based entirely on the age of the victim; the expert's opinion that Appellant "was a pedophile—**itself** was evidence." ***Id.*** (emphasis in original). Further, to the extent Appellant believed the expert's diagnosis "was not fully explained, did not square with accepted analyses of the disorder of was simply erroneous, he certainly was free to introduce evidence to that effect and/or argue to the factfinder that the Commonwealth's expert's conclusions should be discounted or ignored." ***Id.*** at 223-24.[11] Here, Appellant did not do so and it is clear that the expert's opinions were supported not only by A.R.'s age but also by findings based on his review of statutory criteria for a sexually violent predator as well as factors for determining existence of a mental abnormality or personality disorder. N.T., SVP Hearing, 7/22/16, at 7-17.

_____

[11] For instance, Appellant challenged the expert's characterization of A.R. as "prepubescent," which the expert explained was defined as "generally age 13 years or younger," according to the current Diagnostic and Statistical Manual of Mental Disorders ("DSM-5"). While that age range is accepted in the profession "for the purpose of psychiatric nomenclature," and the expert did not base her prepubescence on anything other than age, Appellant did not offer any evidence to support a contradictory finding. Notes of Testimony, SVP Hearing, 7/22/16, at 22-23.

We find the trial court's SVP determination is supported by clear and convincing evidence. Therefore, in the event the trial court reinstates Appellant's judgment of sentence on remand, the trial court shall reinstate the SVP finding as a component of Appellant's judgment of sentence.

In his third issue, Appellant complains that the prosecutor improperly vouched for A.R. and, in doing so, prejudiced Appellant so that the jury was unable to render a fair and impartial verdict. Specifically, Appellant complains that the prosecutor "offered his personal opinion that [A.R.] was telling the truth on no fewer than five occasions during the Commonwealth's closing argument." Appellant's Brief at 29. As Appellant acknowledges, comments made by a prosecutor in closing "cannot be viewed in isolation but, rather, must be considered in the context in which they were made." Appellant's Brief at 2 (quoting *Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. 2009) (additional citation omitted)). We review the prosecutor's statements under a harmless error standard, which requires this Court "to evaluate whether a defendant received a fair trial, not a perfect trial." *Judy*, 978 A.2d at 1019-20 (additional citation omitted).

In the prosecutor's closing, he discussed A.R.'s testimony and her motivation. He commented three times to the effect that her testimony was the truth and then stated, "She was honest from the first word out of her mouth on that stand." N.T., Trial, 1/14/16, at 205-06. Appellant's counsel objected, claiming the prosecution was expressing an opinion about the

testimony. The prosecutor countered that Appellant's counsel had done the same thing with A.R.'s testimony and that he was simply responding. *Id.* at 207.[12] The trial court instructed the jurors that the attorneys' personal opinions about the credibility of any witness are "not relevant and [are] not to be considered." *Id.*

When instructing the jury, the trial court reiterated that arguments of counsel are not evidence and should not be considered as such; that counsel's personal beliefs are irrelevant and immaterial; and that it is up to each juror to decide the case based on the evidence presented and the court's instructions. *Id.* at 217-18. As the trial court suggested, "Much like any other objection which is sustained, once the jury is instructed not to consider a matter, it is presumed that the jury can and will follow the [c]ourt's instruction." Trial Court Rule 1925(a) Opinion, 11/15/16, at 8. We agree. Moreover, as the court recognized, no further objection was lodged and Appellant did not seek a mistrial.

We find the trial court properly sustained the objection raised by Appellant's counsel and delivered an appropriate curative instruction. We reject Appellant's contention that the prosecutor's remarks prejudiced

_____

[12] *See, e.g.*, N. T., Trial, 1/14/16, at 201, where Appellant's counsel remarked, "But I suggest to you that the statements that she has made, the story that she has told, it's just not true. It just didn't happen."

Appellant or deprived him of a fair trial. Appellant's third issue fails for lack of merit.

In his fourth and final issue, Appellant asks us to consider whether the trial court abused its discretion by denying Appellant's request for a new trial based upon after-discovered evidence without providing an explanation for the denial or without a hearing on the motion. When we examine a trial court's decision to deny a new trial on the basis of after-discovered evidence, "we ask only if the court committed an abuse of discretion or an error of law which controlled the outcome of the case." **Commonwealth v. Padillas**, 997 A.2d 356, 361 (Pa. Super. 2010) (quoting **Commonwealth v. Bonaccurso**, 625 A.2d 1197, 1199 (Pa. Super. 1993)).

In his motion for a new trial, Appellant claimed he had obtained newly discovered and highly exculpatory evidence. Specifically, Appellant argued that a new trial was warranted in light of, first, a possible recantation by A.R. and, second, evidence that Appellant was recovering from hip replacement surgery when the first two alleged incidents occurred in 2013. Appellant's Brief at 42. In a one-sentence order entered April 27, 2016, the trial court denied Appellant's motion.

As Appellant acknowledged in his motion, in order to be granted a new trial based upon after-discovered evidence, the defendant must demonstrate, *inter alia*, that the new information could not have been discovered prior to the trial through the exercise of reasonable diligence.

Appellant's Motion for New Trial, 4/25/16, ¶ 23 (citing *Padillas*, 997 A.2d at 363 (additional citation omitted)).[13]

"To obtain a new trial based on after-discovered evidence, the petitioner must explain [*inter alia*] why he could not have produced the evidence in question at or before trial by the exercise of reasonable diligence." *Padillas*, 997 A.2d at 363 (citation omitted). "[A] defendant who fails to question or investigate an obvious, available source of information, cannot later claim evidence from that source constitutes newly discovered evidence." *Id.* at 364 (citation omitted). Further, "a defendant has a duty to bring forth any relevant evidence in his behalf." *Id.* (citation omitted).

In his motion, Appellant suggested that he had identified a witness, "A.B.," who supposedly said A.R. admitted fabricating the allegations against Appellant. However, A.B. was known to Appellant and trial counsel prior to trial and the investigator hired by trial counsel attempted to contact A.B. The investigator "left a business card at the home of A.B. and requested

---

[13] *Padillas* quoted the four-pronged test set forth in *Commonwealth v. Pagan*, 950 A.2d 270, 292 (Pa. 2008), requiring a defendant to prove the evidence could not have been obtained prior to the end of the trial by the exercise of reasonable diligence; the evidence is not merely corroborative or cumulative; it will not be used solely to impeach the credibility of a witness; and it would likely result in a different verdict if a new trial were granted. The test is conjunctive and the defendant must prove each factor by a preponderance of the evidence in order for a new trial to be warranted. *Id.*

A.B.'s mother, contact him to speak about the charges. Neither A.B. nor her mother ever contacted [the investigator]." Motion for New Trial, 4/25/16, at ¶ 13. After trial, a new investigator hired by Appellant's post-trial counsel spoke with another witness, C.M., who told the investigator that she had spoken with A.B. and that A.B. said the victim, A.R., fabricated the allegations against Appellant. The investigator then attempted to speak with A.B. but was denied the opportunity by A.B.'s mother. A.B.'s mother did tell the investigator that A.B. had "nothing to offer to either side of the case, and stated that this is why 'the police' didn't need [A.B.] in the case." Motion for New Trial, 4/25/16, Exhibit C.

Although the trial court did not offer an explanation for denying Appellant's request for a new trial in its order or in its Rule 1925(a) opinion, the lack of an opinion does not pose a substantial impediment to our review. With regard to A.B., Appellant has not demonstrated reasonable diligence in attempting to obtain evidence from A.B. prior to trial. Simply leaving a business card with a "please contact me" request suggests minimal effort in obtaining evidence. More importantly, based on the information obtained by the new investigator, there is no suggestion that A.B. would offer evidence of A.R.'s alleged recantation. To the contrary, A.B.'s mother stated that A.B.

had nothing to offer either side of the case. Appellant has not satisfied either the first or the fourth prongs of the test outlined in **Pagan**.[14] [15]

Appellant also claimed that the original investigator obtained medical records prior to trial reflecting that Appellant underwent hip replacement surgery on January 28, 2013. However, the investigator did not contact the surgeon to discuss Appellant's surgery or any limitations Appellant may have experienced postoperatively. Again, the later of first two incidents involving A.R. occurred on or about March 17, 2013 and the earlier of those incidents occurred a few weeks earlier. Appellant contends the testimony of his surgeon, who has now expressed a willingness to participate in future proceedings, could potentially support a "physical impossibility" defense. Motion for New Trial, 4/25/16, at ¶¶ 22, 24-26.

While it is clear that the surgeon did not offer testimony at trial, it is unclear why Appellant did not even mention the surgery. Surely, he was

---

[14] To the extent Appellant contends he was entitled to a hearing, we disagree. Pa.R.Crim.P. 720(C) (After-Discovered Evidence) provides: "A post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery." The rule does not mandate a hearing. As our Supreme Court recognized in **Commonwealth v. Castro**, 93 A.3d 818, 827 (Pa. 2014), "Simply relying on conclusory accusations made by another, without more, is insufficient to warrant a hearing." The same rationale applies here where Appellant sought a new trial based on undeveloped allegations of what an individual might say.

[15] If a new trial is ordered, the Appellant would be free to offer this "newly-discovered" evidence at trial, so long as the trial court determines it to be relevant and admissible.

aware of the procedure and the timeline surrounding A.R.'s 2013 allegations. He certainly was competent to describe the surgery, his recovery, and any limitations resulting from the surgery. Expert testimony was not required in order to put the fact of the surgery or Appellant's postoperative experiences before the jury. Therefore, Appellant cannot claim entitlement to a new trial based on newly discovered evidence when neither the fact of the surgery nor Appellant's postoperative recovery constituted new information. Appellant's fourth issue fails.[16]

Judgment of sentence vacated. Case remanded for further proceedings in accordance with this Opinion. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/9/2017


_____

[16] To the extent Appellant asks us to consider allegations of ineffectiveness of trial counsel at this juncture, we decline to do so without prejudice to Appellant to raise them in proceedings pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546, if appropriate. *See Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002) ("as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review.").