J-S34033-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAIME PEREZ | : | |
| | : | |
| Appellant | : | No. 727 MDA 2021 |

Appeal from the Judgment of Sentence Entered May 13, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0000725-2019

BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:          **FILED:  DECEMBER 16, 2021**

Jamie Perez (Appellant) appeals from the judgment of sentence[1] entered in the Berks County Court of Common Pleas after he pled guilty to one count of indecent assault (person under 16 years).[2]  Appellant claims there was

_____

[1] The notice of appeal states that the appeal is "from the order determining Appellant is a Sexually Violent Predator . . . entered on April 8, 2021, and the Judgment of Sentence in this matter entered on May 13, 2021."  Appellant's Notice of Appeal, 6/9/21.  While counsel for Appellant purports to appeal from both the SVP determination and the judgment of sentence, an appeal properly lies from the judgment of sentence alone.  ***Commonwealth v. Harris***, 972 A.2d 1196, 1201 (Pa. Super. 2009) (imposition of SVP status is component of judgment of sentence even though ultimate collateral consequences are non-punitive); ***Commonwealth v. Schrader***, 141 A.3d 558, 561 (Pa. Super. 2016) (when defendant waives pre-sentence SVP determination, his judgment of sentence is not final until SVP determination is rendered).  ***See also Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (correcting caption when appellant misstates where appeal lies).

[2] 18 Pa.C.S. § 3126(a)(8).

insufficient evidence to support his designation as a sexually violent predator (SVP) under Revised Subchapter H of the Sexual Offenders Registration and Notification Act (SORNA II).[3]  For the following reasons, we affirm.

We glean the facts supporting Appellant's conviction, which were placed on the record, from his guilty plea hearing.  In November 2018, Appellant put his hand under the victim's dress and touched her vagina outside her underwear.  He then handed her $20 and walked away.  At the time of the sexual assault, Appellant was 62 years old, and the victim was 15 years old.  Appellant and the victim were neighbors, and have never been married to each other.  **See** N.T. Guilty Plea, 5/30/19, at 5-6.

Appellant was subsequently arrested and charged with criminal attempt of aggravated indecent assault (complainant less than 16 years old)[4] and indecent assault (person under 16 years old).  Pursuant to an agreement, Appellant elected to plead guilty on May 30, 2019, to one count of indecent assault.  **See** N.T. Guilty Plea, 5/30/19, at 6.  Under SORNA, indecent assault is classified as a Tier II sexual offense.  **See** 42 Pa.C.S. § 9799.14(c)(1.3).  Tier II offenses require a defendant register as a sexual offender for 25 years.  **See** 42 Pa.C.S. § 9799.15(a)(2).  **See also Commonwealth v. Martinez**,

_____

[3] **See** 42 Pa.C.S. §§9799.10 - 9799.42.  Subchapter H applies to individuals who were convicted of a sexually violent offense that occurred on or after December 20, 2012.  **See** 42 Pa.C.S § 9799.11(c).  As noted below, Appellant committed the sexual assault in 2018.

[4] 18 Pa.C.S. §§ 901, 3125(a)(8).

147 A.3d 517, 523 (Pa. 2016). The trial court thereafter ordered Appellant be assessed by the Sexual Offenders Assessment Board (SOAB) to determine if he qualified as an SVP and if he would be subjected to increased registration, notification, and counseling requirements. **See** 42 Pa.C.S. § 9799.24(a) ("After conviction but before sentencing, a court shall order an individual convicted of a sexually violent offense to be assessed by the board.").

On April 1, 2021, the trial court held an SVP hearing.[5] There, the Commonwealth presented the testimony of Veronique Valliere, Psy.D, of the SOAB. Appellant stipulated to Dr. Valliere's "expertise in the classification of individual's as [SVP's]." N.T. SVP Video H'rg, 4/1/21, at 5. Dr. Valliere had submitted an eight-page assessment report of Appellant on August 10, 2019, which was then entered into evidence at the hearing. **See id.** at 6-7. The expert testified that she reviewed the following documents in order to complete her assessment:

_____

[5] The hearing had been deferred for a period of time "while several cases dealing with the constitutionality of SORNA II . . . moved through the appellate court process." Trial Ct. Op., 7/12/21, at 1 (unpaginated). Pertinent to this appeal, in **Commonwealth v. Butler**, 173 A.3d 1212 (Pa. Super. 2017) (**Butler** I), a panel of this Court held that the statutory mechanism for determining SVP status was unconstitutional because it "increase[d] the criminal penalty to which a defendant [was] exposed without the chosen fact-finder making the necessary factual findings beyond a reasonable doubt." **Id.** at 1218. However, our Supreme Court reversed that ruling in **Commonwealth v. Butler**, 226 A.3d 972 (Pa. 2020) (**Butler** II), holding: "[T]he [SVP registration, notification, and counseling] requirements do not constitute criminal punishment and therefore the procedure for designating individuals as SVPs under Section 9799.24(e)(3) . . . remains constitutionally permissible." **Id.** at 976.

[Numerous] affidavits of probable cause, arraignment information, [the trial court's] order, ChildLine reports, criminal action reports, an investigation by the Board Investigator, numerous protection from abuse [(PFA)] violations, numerous criminal complaints, presentence investigation, some [PFA] orders, police reports, records from Probation and Parole, both county and state, as well as records from Pennsylvania Department of corrections, and the victim impact statement.

*Id.* at 8. Dr. Valliere also relied on Appellant's prior bad acts history, which included: (1) a 1989 rape arrest where charges were later dismissed; (2) a report from a 1991 incident where Appellant had "an intent to commit rape[, but it] did not result in a conviction[;[6]]" and (3) "[a] 2015 arrest for involuntary deviate sexual intercourse as well as some other charges." *Id.* at 11. She indicated Appellant did not participate in the evaluation, but this fact did not preclude her from making a diagnosis. *Id.* at 7. As will be discussed in more detail below, Dr. Valliere opined that Appellant had a condition that met the definition of a mental abnormality, namely "other specified paraphilic disorder to non-consent," and he had a history of predatory behavior based on prior offenses and this assault. *Id.* at 8, 11-12.

_____

[6] Dr. Valliere described the 1991 incident as follows: Appellant violated a PFA his "estranged wife" filed against him when he "forcibly entered" her home. Appellant's SVP Assessment 8/10/19, at 4 (unpaginated). He told her to take her clothes off and she ran into another room and locked the door. *Id.* When police arrived, Appellant's wife stated she was "terrified" of Appellant and "thought he wanted her dead." *Id.* Appellant sexually assaulted her in the past and intended to do so again that night. *Id.* He was charged with burglary, criminal trespass, simple assault, and harassment. *Id.* Appellant was sentenced to 1 and 1/2 to 4 years' imprisonment for criminal trespass and harassment for this incident and was released in 1995. *Id.*

The trial court subsequently issued an order finding Appellant "is a person who has been convicted of a sexually violent offense and that the Commonwealth has proven by clear and convincing evidence that [Appellant] has a mental abnormality or personality disorder that makes [him] likely to engage in predatory sexually violent offenses, thereby meeting the criteria to be classified as" an SVP.  Order, 4/8/21.  On May 13, 2021, the court sentenced Appellant to 160 days' to 23 months' incarceration.  Appellant filed this appeal and a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) on the same day.[7]

Appellant raises one issue on appeal:

> Whether the [trial] court erred in designating Appellant as [an SVP] where the evidence was insufficient to support a finding that makes him likely to engage in predatory sexually violent offenses; specifically, the Commonwealth's evidence relied solely on either unadjudicated arrests, dismissals, and not upon actual convictions in determining Appellant was [an] SVP.

Appellant's Brief at 8.

Our standard of review on this issue is limited:

> In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a sexually violent predator.  As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth.  We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

---

[7] Because Appellant simultaneously submitted a 1925(b) statement with his notice of appeal, the trial court did not issue an order to file one.

***Commonwealth v. Fuentes***, 991 A.2d 935, 942 (Pa. Super. 2010) (*en banc*)

(citation omitted). Moreover,

> [t]he clear and convincing standard requires evidence that is so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [in] issue.

***Commonwealth v. Maldonado***, 838 A.2d 710, 715 (Pa. 2003) (citations and

quotation marks omitted).

> SORNA II defines an SVP as:
>
> An individual who committed a sexually violent offense on or after December 20, 2012, for which the individual was convicted, . . . who is determined to be a sexually violent predator under section 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses.

42 Pa.C.S. § 9799.12. The statute further defines mental abnormality and

predatory as follows:

> **"Mental abnormality."** —A congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons.
>
>             \*     \*     \*
>
> **"Predatory."** —An act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization.

***Id.***

The statute delineates several factors the SOAB evaluator must consider to determine if an offender meets the criteria for classification as an SVP, which include:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

**See** 42 Pa.C.S. § 9799.24(b)(1)-(4).

[W]ith regard to the various assessment factors listed in Section [9799.24], there is no statutory requirement that all of them or any particular number of them be present or absent in order to support an SVP designation. The factors are not a checklist with each one weighing in some necessary fashion for or against SVP designation. Rather, the presence or absence of one or more factors might simply suggest the presence or absence of one or more particular types of mental abnormalities.

Thus, while the Board is to examine all the factors listed under Section [9799.24], the Commonwealth does not have to show that any certain factor is present or absent in a particular case. Rather, the question for the SVP court is whether the Commonwealth's evidence, including the Board's assessment, shows that the person convicted of a sexually violent offense has a mental abnormality or disorder making that person likely to engage in predatory sexually violent offenses.

*Feucht*, 955 A.2d at 381 (citations omitted). Lastly, we note that an issue concerning an expert's diagnosis of a mental abnormality is a challenge to the weight, not the sufficiency, of the evidence. *See Commonwealth v. Hollingshead*, 111 A.3d 186, 193 (Pa. Super. 2015).

Here, Appellant contends the trial court erred in designating him an SVP because the evidence was insufficient and did not meet the clear and convincing standard of review. *See* Appellant's Brief at 19. Appellant centers his argument on attacking the credibility of Dr. Valliere's expert testimony and opinion. Appellant insists Dr. Valliere's diagnosis of other specified paraphilic disorder to non-consent relied on "uncharged, unsupported, [dismissed,] and unproven offenses to decide that Appellant is an SVP[,]" which she was not permitted to do. *Id.* at 22-23. For example, he claims the expert relied on his prior 1991 conviction for criminal trespass in her SVP determination. Appellant points out the prior offense was never charged as a sexual offense

and he was never convicted of a sexual offense. *See id.*, at 23. Furthermore, he alleges the prior sexual offenses that he was arrested for in between the criminal trespass conviction and the present conviction were dismissed. *See id.* As such, Appellant alleges those dismissals were not "indicative of his proclivities since they [were] just bare allegations or unproven assertions[.]" *Id.*

Appellant also argues he had a prior record score of zero, his last criminal conviction was in 2004, and his history of PFA's and violations could not support the expert's opinion that he had a "long history of violence towards women." Appellant's Brief at 24-25. He complains the PFA violations were merely for breaking a no-contact order, and "[t]he incident of alleged violence giving rise to the PFA was never proven [ ] or admitted to" by him. *Id.* at 25. Appellant maintains Dr. Valliere could not indicate where in the record he "admitted to intending to rape" the victim in the 1991 criminal trespass case. *Id.* at 23 (record citation omitted). Appellant argues without these considerations, Dr. Valliere "would have reached a different diagnosis[.]" *Id.* at 24.

Lastly, Appellant challenges Dr. Valliere's opinion regarding the "current offense" and the "characteristics of the individual" factors pursuant to Section 9799.24. He states:

> In regards to facts of the current offense, Dr. Valliere conceded the [present] offense had a single victim, Appellant did not do more than was necessary to gain compliance from the [minor victim], there was no unusual cruelty by the individual during the commission of the crime, the [minor victim] was not unusually

compromised in any way. However, Dr. Valliere does qualify the facts of the current offense by stating that Appellant also admitted intending to rape another victim and that the pain and terror of the victim was no deterrent to his aggressive behavior and motivation to rape in the past. These allegations have no place in determining facts of the current offense, especially when these allegations were never charged or proven. In regards to the characteristics of the offender, Dr. Valliere conceded that Appellant was intoxicated at the time of the offense and substance use increased Appellant's individual risk of offending.

Appellant's Brief at 25-26.

We note Appellant's claim on appeal mainly goes to the weight, and not the sufficiency, of the evidence. "Appellant's arguments ignore the well-settled law that an expert's opinion, which is rendered to a reasonable degree of professional certainty, is itself evidence." *See Fuentes*, 991 A.2d at 944 (citation and emphasis omitted). To the extent Appellant claims Dr. Valliere's diagnosis was erroneous, "he was free to introduce evidence to that effect and/or to argue to the fact-finder that the Commonwealth's expert's conclusions should be discounted or ignored." *Id.* at 945 (citation omitted). This Court is not permitted to reweigh the evidence and make credibility determinations. *Id.* at 944-45. Moreover, Appellant has not properly preserved a weight claim. *See* Pa.R.Crim.P. 607; Pa.R.A.P. 302. As such, any challenge to the weight of the evidence is waived.

Furthermore, to the extent Appellant argues Dr. Valliere erred when she relied on prior instances of uncharged conduct in her SVP determination, he fails to cite any authority in support of this claim. Appellant's Brief at 22-23. The argument portion of an appellate brief must be developed with sufficient

citations to relevant authority. *See* Pa.R.A.P. 2119(a). When an appellant fails to develop his argument in such a way, the claim is subject to waiver. ***Commonwealth v. B.D.G.***, 959 A.2d 362, 372 (Pa. Super. 2008) (finding waiver where an appellant fails to cite sufficient legal authority).

Moreover, we note an evaluator is not limited by the factors in Section 9799.24(b). *See* 42 Pa.C.S. § 9799.24(b) ("[a]n assessment shall include, *but not be limited to*, an examination" of enumerated factors) (emphasis added). Nevertheless, to the extent Appellant does raise a sufficiency argument, we will proceed to the merits.

The trial court deemed Appellant to be an SVP based on Dr. Valliere's assessment and testimony. Trial Ct. Op., 7/12/21, at 4. The trial court relied upon Dr. Valliere's conclusions as follows:

> [Appellant] had a long history of mental health treatment and medication, but those underlying conditions were not the impetus to his sexual offending behavior. [The expert] indicated that based on records of past interaction with the legal system that it does not deter him from aggressive action and of a sexual nature on more than one occasion. While the age of [Appellant] statistically indicates a reduced risk of violence, [Appellant] was continuing to offend and he was over age [60] at the time of the current offense. The particular cognitive limitations of [Appellant] were discussed as making complex self-management more difficult and noting his treatment needs are more particular than offenders without those limitations. [Dr. Valliere] found [Appellant's] behavior met the statutory definition of predatory behavior. After vigorous cross examination, Dr. Valliere ultimately stood firm with her opinion that based on the statutory definition, [Appellant] met the qualifications to be designated [an SVP].

Trial Ct. Op. at 4-5.

- 11 -

After a careful review, and viewing the evidence in the light most favorable to the Commonwealth, we conclude the record supports the trial court's SVP classification. First, it merits repeating that Appellant stipulated to Dr. Valliere's expertise in the SVP field. *See* N.T., SVP Video H'rg, at 5. Second, in addressing the mental abnormality element, Dr. Valliere referenced an incident where Appellant committed a sex offense in 1991. The expert testified that even though Appellant was only charged with burglary and convicted of criminal trespass, he "was placed into sexual offender treatment while incarcerated" as a result of the incident. *Id.* at 9, 13; Appellant's SVP Assessment at 3. Dr. Valliere stated Appellant admitted to an "intent" to commit rape during the 1991 incident that was recorded in a presentence investigation report. N.T., SVP Video H'rg, at 11. She could not "quite remember" exactly where she saw the admission because she did not "have the records in front of [her.]" *Id.* at 13-14. Counsel for Appellant never objected to the admission of this testimony.[8] *See id.* Dr. Valliere emphasized that after Appellant "was discharged from sex offender treatment, there was a very significant concern about his future dangerousness, especially in light of the fact that he admitted his offending but did not show any regard for the impact or take responsibility for his actions[.]" *Id.* at 12. The expert noted that "recidivism after sexual offender treatment is considered a significant

---

[8] Though Appellant's counsel argued with Dr. Valliere regarding the source of her information, he never made a formal objection to her testimony.

risk[.]" ***Id.*** at 11.  In comparing the 1991 incident and the present assault, Dr. Valliere commented that Appellant "used force and aggression to engage in nonconsensual sexual assault of an unwilling victim." ***Id.*** at 9.

As for Appellant's diagnosis of a paraphilic disorder, Dr. Valliere stated "the fact that [Appellant is] capable of engaging in this behavior in 1991 and again [about 20] years later, [and] has been arrested in between then for other sex offenses, suggests [ ] a pattern of arousal to nonconsensual sexual behavior that continues to express itself over time."  N.T. SVP Video H'rg, at 9.

Regarding Appellant's predatory behavior, Dr. Valliere opined Appellant used his relationship with the victim to "sexually victimize her" similar to the 1991 incident with another victim.  N.T. SVP Video H'rg, at 10.  Dr. Valliere stated if she did not rely on Appellant's prior dismissed sex offense charges, it would "change [Appellant's] diagnosis." ***Id.*** at 11.  However, she pointed out her finding of predatory behavior and Appellant's diagnosis were also based on "his offense characteristics, [ ] personality traits, [ ] treatment records[,]" "substance abuse history, [and his] history of diagnoses." ***Id.*** at 11, 17-18.  For example, Dr. Valliere considered that two women had previously filed PFA's against Appellant. ***Id.*** at 15.  Between 1989 and 2003, Appellant had been convicted for 8 violations of these PFA orders. ***Id.*** At 16. Additionally, Dr. Valliere stated "once an offender, especially a domestic violence offender, rises to the level of being convicted for [PFA] orders, that is highly significant regarding his danger to others . . . because what it reveals

about the person's character and danger level is they're not deterred by the only agency that the victim has to protect themselves[.]" ***Id.***

In the present case, Appellant had only one victim, but Dr. Valliere emphasized his "long history" of "violence against women" as well as his substance abuse and mental health issues. Appellant's SVP Assessment, at 6. Dr. Valliere stated in her assessment Appellant's history is an indicator that his "risk of acting upon his deviance [is] more likely." ***Id.*** Dr. Valliere opined Appellant acts "without regard to the risks to himself or the victim[,]" and his behaviors "indicate [he] has deviant arousal and is willing to make plans to have it fulfilled[.]" ***Id.***

Based on this assessment, we agree with the trial court's determination that the Commonwealth presented clear and convincing evidence that Appellant suffers from a mental abnormality, engages in predatory behavior, and Appellant qualified as an SVP. Trial Ct. Op. at 5; ***Fuentes***, 991 A.2d at 942, 944 (when "the expert's report and testimony support the trial court's finding that [defendant] was an SVP, there is no basis for granting sufficiency relief") (citation omitted). Dr. Valliere based Appellant's diagnosis for a mental abnormality on his "persistent interest and arousal to non-consensual sexual acts[.]" Appellant's SVP Assessment at 6-7; ***see*** 42 Pa.C.S. § 9799.12. Dr. Valliere also concluded Appellant engaged in predatory behavior when he "promot[ed] a relationship with money and sexualized comments" and used his relationship to [the victim] as her neighbor "to gain access [ ] to assault her." Appellant's SVP Assessment at 8; ***see*** 42 Pa.C.S. § 9799.12.

Though Appellant is correct in asserting he has no prior convictions for sexual offenses, the statute does not require such prior offenses for an SVP determination. Moreover, Appellant offers no legal authority suggesting otherwise. We emphasize the statute merely requires a determination the offender have "a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9799.12. A court may determine an individual is an SVP based on expert testimony and the surrounding facts of the case. *See Commonwealth v. Hollingshead*, 111 A.3d 186, 193 (Pa. Super. 2015) (trial court may rely on expert testimony and facts in a given case to conclude an individual's diagnosis is sufficient to find they have a mental abnormality under the statute). Accordingly, we conclude the trial court did not err in concluding the Commonwealth met its burden in establishing that Appellant is an SVP. *See Fuentes*, 991 A.2d at 942; *see Maldonado*, 838 A.2d at 715. Therefore, Appellant's sole argument on appeal is unavailing.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2021

- 15 -